No. 15-35617

IN THE

# United States Court of Appeals

## FOR THE NINTH CIRCUIT

WESTERN SECURITY BANK, A DIVISION OF GLACIER BANK,

*Plaintiff – Appellee*,

V.

SCHNEIDER LIMITED PARTNERSHIP,

*Defendant,*

AND

JAY WINZENREID, M.D., ET AL.,

*Defendants – Appellants.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA, HON. SUSAN P. WATTERS
CASE NO. 1:15-CV-00010-SPW-CSO

## APPELLEE'S MOTION TO DISMISS

ROBERT L. STERUP
SHANE P. COLEMAN
MICHAEL P. MANNING
HOLLAND & HART LLP
401 N. 31st St., Suite 1500
P.O. Box 639
Billings, MT 59103
Telephone: (406) 252-2166
Fax: (406) 252-1669
rlsterup@hollandhart.com
spcoleman@hollandhart.com
mpmanning@hollandhart.com

*Counsel for Appellees*

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, Appellee Western Security Bank makes the following disclosure:  Western Security Bank is a division of Glacier Bank.  The parent corporation of Glacier Bank is Glacier Bancorp.  No publicly traded entity owns ten percent or more of Glacier Bancorp's stock.

# TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT............................................i

TABLE OF AUTHORITIES.....................................................iii

INTRODUCTION ..............................................................1

STATEMENT OF THE CASE ....................................................2

    A.    The Loan Agreements...............................................3

    B.    Default and Partial Recovery ....................................4

    C.    The Wyoming Doctors' Attempts to Stay ...........................5

ARGUMENT .................................................................6

I.    This Court Does Not Have Jurisdiction Under the
Federal Arbitration Act...................................................6

    A.    Neither FAA Section 3 Nor FAA Section 16 Apply
        Absent an Attempt to Invoke an Arbitration
        Agreement. .......................................................7

    B.    Because the Wyoming Doctors Are Not
        Attempting to Enforce an Arbitration Agreement
        Against the Bank, the FAA Did
        Not Apply to Their Stay Motion and Does
        Not Confer Appellate Jurisdiction. ..............................11

II.    The Court Does Not Have Jurisdiction Over an
Appeal from the District Court's Denial of a
Discretionary Stay.......................................................12

CONCLUSION ..............................................................13

CERTIFICATE OF COMPLIANCE ...............................................14

CERTIFICATE OF SERVICE...................................................15

APPENDIX ................................................................Ai

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Adams v. Georgia Gulf Corp.*,
   237 F.3d 538 (5th Cir. 2001)................................................................ 13

*Arthur Andersen v. Carlisle*,
   556 U.S. 624 (2009) ............................................................ 7, 8, 10, 11

*Ashcroft v. Mattis*,
   431 U.S. 171 (1977) (per curiam) ....................................................... 8

*Bombardier Corp. v. AMTRAK*,
   333 F.3d 250 (D.C. Cir. 2003) .......................................................... 10

*Conrad v. Phone Directories Co., Inc.*,
   585 F.3d 1376 (10th Cir. 2009)................................................. 9, 10, 11

*Invista S.A.R.L. v. Rhodia, S.A.*,
   625 F.3d 75 (3d Cir. 2010) ............................................................... 12

*Landis v. N. Am. Co.*,
   299 U.S. 248 (1936)........................................................................ 12

*Pet Milk Co. v. Ritter*,
   323 F.2d 586 (10th Cir. 1963) (per curiam) ...................................... 13

*Wheeling Hosp., Inc. v. Health Plan of
   the Upper Ohio Valley, Inc.*,
   683 F.3d 577 (4th Cir. 2012)............................................................ 10

## Statutes and Rules

Federal Arbitration Act
   9 U.S.C. § 1 *et seq.*.................................................................. *passim*

9 U.S.C. § 2 .................................................................................. 10

9 U.S.C. § 3 ............................................................................. *passim*

9 U.S.C. § 4 ............................................................................ 9

9 U.S.C. § 16 ................................................................. *passim*

9 U.S.C. § 16(a) ............................................................. 9, 10

9 U.S.C. § 16(a)(1)(A) ............................................... 2, 6, 11

Fed. R. App. P. 27(d)(1) ........................................................ 14

9th Cir. R. 27-1 ....................................................................... 2

# INTRODUCTION

This is an interlocutory appeal over which this Court lacks jurisdiction. Appellants Jay Winzenreid, Stephen Emery, and Big Horn Basin and Joint, LLC (collectively, the Wyoming Doctors) admit that they do not seek to compel arbitration of any of the claims in this litigation. Yet they insist that they are entitled to a stay under the Federal Arbitration Act (FAA), and that the FAA also permits immediate appeal of the district court's order denying their stay motion. Specifically, they believe that the district court must stay this action—in which Appellee Western Security Bank seeks to enforce commercial loan guaranties—merely because they initiated a separate arbitration against a separate party. But critically, the Bank is not a party to that arbitration, and the Wyoming Doctors do not contend that the Bank must arbitrate its claims there, or in any other arbitration.

As a result, the Wyoming Doctors' jurisdictional theory fails. Because they do not seek to compel arbitration with the Bank, they have necessarily admitted that the district court, not an arbitrator, should adjudicate this case. Likewise, they have admitted that they are not trying to enforce any arbitration agreement against the Bank. Both

1

those positions are inconsistent with the theory that they are proceeding exclusively under the FAA.  Absent an effort to force arbitration, the district court had no reason or authority to decide whether any issue in the case is "referable to arbitration," meaning that the Wyoming Doctors' stay motion did not arise under FAA Section 3, regardless how they titled it.  Consequently, their appeal does not arise under the FAA either, and Section 16(a)(1)(A) does not confer appellate jurisdiction.

In reality, the Wyoming Doctors' motion to stay was simply a request for a discretionary relief.  This Court lacks jurisdiction over the district court's interlocutory order denying that request.  Thus, it should dismiss this appeal.[1]

## STATEMENT OF THE CASE

The parties' underlying dispute stems from a commercial loan agreement gone bad.  The merits of the Bank's claims are still in dispute, but the appropriate forum is not.

---

[1] As required by the Advisory Committee Notes to Circuit Rule 27-1, the Bank's counsel contacted opposing counsel before filing this motion. The Wyoming Doctors oppose the motion.

## A.    The Loan Agreements

In December 2011, the Bank loaned more than $2 million for construction of an ambulatory surgical center in Billings, Montana under a series of loan agreements with a group of neurosurgeons and their various entities, including the Wyoming Doctors.  App. A35.[2]  The borrowers structured the loan so that Omni Funding Corp., an affiliate of Meridian Surgical Partners, LLC (Meridian), received the loan proceeds.  App. A35-36.  Omni, in turn, leased the surgical center to Orthopedic Neuro Institute Surgical Center, LLC (ONISC), an entity that the neurosurgeons owned in various percentages.  *Id*.

ONISC agreed to make lease payments to Omni equal to Omni's loan obligations to the Bank, *id*., and the neurosurgeons all guaranteed a percentage of the full loan amount in proportion to their respective ownership interests in ONISC:

| | |
|---|---|
| Schneider Limited Partnership | 28.75% |
| Jay Winzenreid, M.D. | 12.50% |
| Stephen Emery | 12.50% |
| Big Horn Basin and Joint, LLC | 12.50% |
| Andrew Baker | 6.25% |
| Daniel Mattson | 6.25% |

---

[2] Citations to "App." refer to the Appendix attached to this motion.

App. 35. The commercial guaranties were unconditional; each guarantor promised to repay its share of the indebtedness regardless whether the Bank exhausted its remedies against other parties. *See, e.g.*, App. A37-48.

## B. Default and Partial Recovery

Although the surgical center was constructed, it never opened for business due to disputes between Meridian and the neurosurgeons. After Omni defaulted on the loan in September 2013 still owing more than $1.9 million, the Bank sued Meridian, Omni and another Meridian affiliate in federal court. App. A36. The parties settled that litigation, with the Meridian entities agreeing to pay 46.25 percent of the unpaid debt. *Id*.

The Bank then filed a separate suit against the guarantors in state court to collect the remaining debt. While that suit was pending, the Wyoming Doctors filed a demand for arbitration naming Meridian and Meridian Surgical Partners-Montana, LLC as respondents, and seeking to recover from Meridian amounts sufficient to satisfy their

guaranties to the Bank.[3]  App. A3.  The Wyoming Doctors, however, have never sought to compel the Bank to arbitrate its claims against them in this litigation, either by trying to enforce their arbitration agreement with Meridian against the Bank or by any other theory. Instead, they have conceded that the district court may adjudicate the Bank's claims.  *See* App. A8, A17-18.

### C.    The Wyoming Doctors' Attempts to Stay

In early 2015, the Wyoming Doctors removed this case to district court and filed a motion to stay pending their arbitration with Meridian.  App. A2.  The Magistrate Judge recommended denying that motion for two principal reasons.  *First*, the Wyoming Doctors have not moved to compel arbitration of *this* case, meaning that the FAA does not apply.  App. A8-9.  *Second*, a discretionary stay is unwarranted because the Wyoming Doctors' separate arbitration with Meridian will not resolve the claims at issue here and would prejudice the Bank.  App. A9-10.  Over the Wyoming Doctors' objection, the district court adopted the Magistrate Judge's report and recommendation in full and denied the stay motion.  App. A15-24.

---

[3] The other guarantors have either agreed to honor their guaranties or have been ordered to do so by the district court.  App. A16, A36.

In response, the Wyoming Doctors filed two additional motions: a motion for reconsideration, and a motion to alter or amend judgment. *See* App. A25. The district court denied both motions, reasoning (1) that the Wyoming Doctors' delayed review of discovery documents they received well before filing their motion to stay did not entitle them to a second bite at the apple, and (2) their motion to alter or amend was simply a motion for reconsideration for which they did not obtain leave of court, as required by the local rules. App. A25-27. While those motions were pending, the Wyoming Doctors filed this appeal challenging the district court's denial of their stay motion. App. A28-29.

## ARGUMENT

### I. This Court Does Not Have Jurisdiction Under the Federal Arbitration Act.

To justify an interlocutory appeal, the Wyoming Doctors invoke Section 16(a)(1)(A) of the FAA, which authorizes an appeal from any order refusing a stay under FAA Section 3. 9 U.S.C. § 16(a)(1)(A). But because the Wyoming Doctors are admittedly not seeking to arbitrate the claims in this case, their motion to stay was not a Section 3 request, regardless how they styled it. As such, the FAA does not apply and this Court lacks jurisdiction.

6

**A.     Neither FAA Section 3 Nor FAA Section 16 Apply Absent an Attempt to Invoke an Arbitration Agreement.**

By its plain language, Section 3 requires district courts to stay an action in favor of arbitration if an issue in the case is "referable to arbitration" under a written arbitration agreement, and one of the parties requests a stay.  9 U.S.C. § 3 (emphasis added).  In *Arthur Andersen v. Carlisle*, the Supreme Court clarified that a litigant who is a non-party to a written arbitration agreement may invoke Section 3 if state law principles would allow it to enforce the agreement.  556 U.S. 624, 629-31 (2009).  It also clarified that whether a litigant may, in fact, enforce an arbitration agreement is irrelevant to whether appellate jurisdiction exists under Section 16.  *Id*. at 627-29.  In other words, the merits of the Section 3 request do not matter; if a litigant attempts to enforce the arbitration agreement, it may immediately appeal the denial of even an "utterly frivolous" stay motion.  *Id*.  Thus, if the Wyoming Doctors were attempting to enforce the Meridian arbitration agreement against the Bank, *Arthur Andersen* would apply and the FAA would confer appellate jurisdiction over the denial of their stay

motion regardless whether the agreement actually requires the Bank to arbitrate.

*Arthur Andersen* does not, however, extend Section 3 to a stay motion untethered to a corresponding attempt to compel arbitration. Indeed, the essential predicate for *Arthur Andersen's* analysis was that the petitioners "argu[ed] that the principles of equitable estoppel demanded that respondents arbitrate their claims . . . ." *Id.* at 627. Without that predicate, *Arthur Andersen* would make little sense. After all, if a litigant does not seek to compel arbitration, a court has no authority to pontificate about the hypothetical scope or enforceability of the underlying arbitration agreement. *See, e.g.*, *Ashcroft v. Mattis*, 431 U.S. 171, 172 (1977) (per curiam) (courts may not answer hypothetical questions). So it could *never* conclude that an issue in the case is "referable to arbitration," whether because of state law principles or any other reason. Said differently, by failing to seek arbitration, a litigant necessarily deprives the court of the ability to make precisely the determination Section 3 requires. Accordingly, a stay motion unaccompanied by an argument—however frivolous—that a litigant's

opponent is bound to arbitrate under a written agreement is not a Section 3 motion.

It follows that litigants cannot create appellate jurisdiction simply by citing Section 3 in a motion that could never logically arise under that statute. For example, in *Conrad v. Phone Directories Co., Inc.*, the Tenth Circuit considered whether a pleading must explicitly reference FAA Section 3 or 4 to allow a party to later invoke appellate jurisdiction under Section 16(a). 585 F.3d 1376, 1385-86 (10th Cir. 2009). Rejecting an approach that looks exclusively to the caption of a motion, the court held that for appellate jurisdiction to exist, "the defendant in the district court must either move to compel arbitration and stay litigation explicitly under the FAA, or must make it plainly apparent that he seeks only the remedies provided for by the FAA—namely, arbitration rather than any judicial determination—in his prayer for relief." *Id*. at 1385. Although motions referencing Sections 3 or 4 will most often confer jurisdiction, "a caption-only approach would create incentives for litigants to 'game' the captions of their motions in an effort to gain an interlocutory appeal where none is warranted." *Id*. Thus, when "the court suspects that the motion has been mis-captioned in an attempt to

take advantage of § 16(a), the court must look beyond the caption to the essential attributes of the motion itself." *Id.* If "the movant in the district court requests a judicial remedy that is inconsistent with the position that the issues involved may be decided only by the arbitrator, the movant is no longer proceeding exclusively under the FAA and has forfeited [its] right to interlocutory appeal under § 16(a)." *Id.* at 1386.

Any other approach would fly in the face of the FAA. The purpose of Section 3 is to "allow[ ] litigants already in federal court to invoke agreements made enforceable by [FAA] § 2." *Arthur Andersen*, 556 U.S. at 630. So a stay motion that does *not* seek to invoke an arbitration agreement cannot be a Section 3 motion; absent an effort to compel arbitration, the motion falls outside the FAA. And by extension, the denial of a motion that does not arise under Section 3 does not confer appellate jurisdiction under Section 16. *See, e.g.*, *Wheeling Hosp., Inc. v. Health Plan of the Upper Ohio Valley, Inc.*, 683 F.3d 577, 586 (4th Cir. 2012) (appellate jurisdiction turns on "whether [movant] made it clear within the four corners of its motion to dismiss that it was seeking enforcement of the arbitration agreement"); *Bombardier Corp. v. AMTRAK*, 333 F.3d 250, 254 (D.C. Cir. 2003) (no appellate jurisdiction

where movant "exhibited no intent to pursue arbitration"). Tellingly, the Wyoming Doctors failed to cite a single case below applying *Arthur Andersen* or any other authority to reach a contrary result.

> **B.  Because the Wyoming Doctors Are Not Attempting to Enforce an Arbitration Agreement Against the Bank, the FAA Did Not Apply to Their Stay Motion and Does Not Confer Appellate Jurisdiction.**

Applying the correct jurisdictional analysis is straightforward here. It is undisputed that although the Wyoming Doctors are separately arbitrating with Meridian, they do not seek to compel the Bank to arbitrate any of the claims in this litigation. *See* App. A8, A17-18. As such, their position is inconsistent with the theory that the issues may be decided only by an arbitrator. To the contrary, they freely admit that the district court, not an arbitrator, should decide the claims in this case. Accordingly, they are not proceeding exclusively under the FAA, and they have no right to interlocutory appeal under Section 16(a)(1)(A). *See Conrad*, 585 F.3d at 1385-86.

As *Conrad* explained, allowing the Wyoming Doctors to appeal the district court's order would endorse a form over substance rule. It would allow any litigant to create appellate jurisdiction merely by citing FAA Section 3 in a stay motion, even when it is abundantly clear that

11

the litigant is not actually attempting to proceed under the FAA by forcing its opponent to arbitrate in lieu of litigation. The practical result would be precisely what the Wyoming Doctors hope to obtain here: a *de facto* stay while the parties spend nearly two years on appeal even though the moving party's motion did not arise under Section 3 in the first place.

Simply put, because the Wyoming Doctors did not seek to compel the Bank to arbitrate, its request that the district court stay this case was not a Section 3 motion regardless what they called it. As a result, this Court does not have jurisdiction over their interlocutory appeal under Section 16.

## II. The Court Does Not Have Jurisdiction Over an Appeal from the District Court's Denial of a Discretionary Stay.

Because the Wyoming Defendants' stay motion did not arise under FAA Section 3, it was subject to the standards governing discretionary stays. *See Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936). But "the denial of a stay based on an exercise of the district court's discretion, as opposed to the denial of a mandatory stay based on a failure to meet the requirements of Section 3, [is] a non-final order over which [the Court] has no jurisdiction." *Invista S.A.R.L. v. Rhodia, S.A.*, 625 F.3d 75, 89

(3d Cir. 2010) (quoting reference omitted); *see also Adams v. Georgia Gulf Corp.*, 237 F.3d 538, 541 (5th Cir. 2001); *Pet Milk Co. v. Ritter*, 323 F.2d 586, 588 (10th Cir. 1963) (per curiam).  Moreover, the Wyoming Doctors did not invoke any grounds for jurisdiction other than Section 16 in any event.  *See* App. A28-33.

## CONCLUSION

For the reasons stated above, the Court should dismiss the Wyoming Doctors' appeal.

Dated:  November 19, 2015

Respectfully submitted,


*/s/  Michael P. Manning*
Robert L. Sterup
Shane P. Coleman
Michael P. Manning
Holland & Hart LLP
401 North 31st Street., Suite 1500
P.O. Box 639
Billings, Montana  59103-0639

*Counsel for Appellee*

## CERTIFICATE OF COMPLIANCE

I certify that this motion complies with the formatting

requirements of Fed. R. App. P. 27(d)(1) and does not exceed 20 pages.


*/s/ Michael P. Manning*
Robert L. Sterup
Shane P. Coleman
Michael P. Manning
Holland & Hart LLP
401 North 31st Street., Suite 1500
P.O. Box 639
Billings, Montana 59103-0639

*Counsel for Appellee*

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on November 19, 2015.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

*/s/ Michael P. Manning*
Robert L. Sterup
Shane P. Coleman
Michael P. Manning
Holland & Hart LLP
401 North 31st Street., Suite 1500
P.O. Box 639
Billings, Montana  59103-0639

*Counsel for Appellee*

8240898_2

# APPENDIX

# APPENDIX TABLE OF CONTENTS

**Page(s)**

Findings and Recommendation of
U.S. Magistrate Judge.................................................................A1 – A14

District Court's Opinion and Order
Adopting Magistrate Judge's Findings and
Recommendations.....................................................................A15 – A24

District Court's Order Denying Motion for
Reconsideration and Motion to Alter or
Amend Judgment .....................................................................A25 – A27

Notice of Appeal........................................................................A28 – A29

Amended Notice of Appeal .........................................................A30 – A33

Affidavit of Gregg Glueckert in Support of
Plaintiff's Motion for Summary Judgment.................................A34 –A36

Commercial Guaranty – Ex. A to the Wyoming
Doctors' Stay Motion ................................................................A37 – A48

8246984_1

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
### BILLINGS DIVISION

| | |
|---|---|
| WESTERN SECURITY BANK, A Division of Glacier Bank,<br><br>Plaintiff,<br><br>vs.<br><br>SCHNEIDER LIMITED PARTNERSHIP, JAY WINZENREID, M.D., STEPHEN EMERY, BIG HORN BASIN BONE AND JOINT, LLC, ANDREW BAKER, DANIEL MATTSON,<br><br>Defendants. | CV 15-10-BLG-SPW-CSO<br><br><br>**FINDINGS AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE** |

This action arises from commercial guaranty agreements.  Now pending are:

>  (1) Plaintiff Western Security Bank's ("WSB") Motion for Summary Judgment (*ECF 12*) against Defendant Schneider Limited Partnership ("Schneider") as to Count 1 of the Complaint, and

>  (2) Defendants Jay Winzenried, Stephen Emery, and Big Horn Basin Bone and Joint, LLC's ("Moving Defendants") Motion to Stay Proceedings (*ECF 17*).

Having reviewed the arguments and the applicable law, the Court recommends as follows.

-1-

A1

## I.    <u>BACKGROUND</u>

In December 2011, WSB entered into loan agreements with

Meridian Surgical Partners, LLC and affiliates, and Omni Funding

Corp., together with defendants Schneider, Andrew Baker, Daniel

Mattson, Jay Winzenreid, Stephen Emery, and Big Horn Basin and

Joint, LLC.  Pursuant to these agreements, WSB loaned more than $2.0

million for construction of an ambulatory surgical center in Billings,

Montana.  *ECF 15* at 2.

Schneider and the Moving Defendants each executed an

unconditional Commercial Guaranty Agreement, which guaranteed a

certain percent of the debt owed to WSB by Omni.  *ECF 18-1.*  Omni

defaulted on the loan in September 2013, and WSB now seeks to

recover against the defendants for the money owed under the Guaranty

Agreements.  WSB has previously settled its claims against the

Meridian entities, Daniel Mattson, and Andrew Baker.  *ECF 15 at 3.*

Jurisdiction in this action rests on diversity.  The case was

removed from state court in February 2015.  *ECF 1.*  The pending

motions were filed in March.  The Court will first address the motion to

stay proceedings.

## II.  MOTION TO STAY

### A.   PARTIES' ARGUMENTS

In February 2014, the Moving Defendants filed a Demand for
Arbitration with the American Arbitration Association, naming
Meridian Surgical Partners-Montana, LLC and Meridian Surgical
Partners, LLC, as respondents. *ECF 23-3.* The arbitration is currently
pending.  The Moving Defendants argue that this case should be
indefinitely stayed pending resolution of the arbitration between them
and Meridian. Defendants argue that the operative facts in the
arbitration are based on Meridian's failure to obtain a transfer
agreement with a local Billings hospital in order to open the ambulatory
surgical center.  They argue that Meridian fraudulently induced them
to move forward with the financing of the ASC by misrepresenting to
them that Meridian had obtained a transfer agreement when in fact it
had not. *ECF 18* at 24–25.  They argue that both this action and the
arbitration are about the damages they suffered as a result of reliance
on the actions of Meridian, and that determination of liability and
assessment of damages, including payment to WSB, will be resolved in
the pending arbitration. *Id.* at 26.

The Moving Defendants further argue that a stay is warranted under either the mandatory grounds of the Federal Arbitration Act ("FAA"), 9 U.S.C § 3, or in the exercise of the Court's discretion. *Id.* at 24. They argue that a decision made in this proceeding could be used against them in the pending arbitration, there is the potential for contradictory findings, and WSB faces virtually no hardship based on the delay. *ECF 18* at 36.

WSB responds that the FAA is inapplicable because compelled arbitration is not sought in this case, nor could it be. *ECF 23* at 7. WSB is not contractually bound by a written arbitration agreement. *Id.* at 8.

WSB agrees that the standards for a discretional stay could apply here, but argues that the Moving Defendants have not met their burden. WSB argues that they seek an indefinite stay, which could put the case on hold for months or even years. *Id.* at 10–11. WSB argues that the monetary recovery sought in this case is not intertwined with the issues to be arbitrated, and that the resolution of the arbitration has no bearing on this Court's adjudication of WSB's claims. *Id.* at 11. If anything, WSB argues that a decision in this case would only cement the damages incurred by the Defendants, helping the arbitration, with

**A4**

no risk of inconsistent results.  *Id* at 16, 19.  WSB argues that the

allegations made in the Defendants' motion indicate the need for

discovery to start.  *Id.* at 15.  Nonetheless, WSB also represents that it

does not presently plan to seek substantive ruling from this Court until

after the arbitration concludes.  *See ECF 23 at 6–7.*

## B.   LEGAL STANDARD

The Supreme Court has emphasized that "[a]rbitration is strictly

a matter of consent and thus is a way to resolve those disputes—*but*

*only those disputes*—that the parties have agreed to submit to

arbitration."  *Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733, 741–

742 (9th Cir. 2014) (*quoting Granite Rock Co. v. Int'l Bhd. of Teamsters*,

561 U.S. 287, 299 (2010) (emphasis in original) (internal quotation

marks and citations omitted)).  In determining whether parties have

agreed to submit to arbitration, courts are to "apply general state-law

principles of contract interpretation, while giving due regard to the

federal policy in favor of arbitration by resolving ambiguities as to the

scope of arbitration in favor of arbitration."  *Id.* (*quoting Mundi v.*

*Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1044 (9th Cir. 2009) (internal

quotation marks and citations omitted)).  Once a dispute is referred to

arbitration, a suit may be stayed for the pendency of the arbitration.

Specifically, the FAA provides that:

> If any suit or proceeding be brought in any of the courts of
> the United States upon any issue referable to arbitration
> under an agreement in writing for such arbitration, the
> court in which such suit is pending, upon being satisfied that
> the issue involved in such suit or proceeding is referable to
> arbitration under such an agreement, shall on application of
> one of the parties stay the trial of the action until such
> arbitration has been had in accordance with the terms of the
> agreement, providing the applicant for the stay is not in
> default in proceeding with such arbitration.

9 U.S.C. § 3.

In addition to stays granted under the FAA, a stay may be

granted based on the discretion of the Court. The U.S. Supreme Court

announced the general principle that district courts have inherent

power to control their dockets and promote efficient use of resources "for

itself, for counsel, and for litigants." *Landis v. North American Co.*, 299

U.S. 248, 254 (1936). A district court thus enjoys discretion to stay

proceedings in its own court when appropriate. *Id.*; *Dependable

Highway Express, Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066 (9th

Cir. 2007); *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1109 (9th Cir. 2005).

But the Ninth Circuit Court of Appeals cautions that it reviews a

district court's exercise of discretion in entering a stay order under a

"somewhat less deferential" standard than the abuse-of-discretion

standard employed in other contexts. *Dependable Highway*, 498 F.3d at

1066 (citation omitted).

In *Landis*, the Supreme Court provided the following guidance for

courts considering motions for stay orders and observed that the

analysis requires balancing the benefits of a stay with any hardship a

stay may impose:

> [A party seeking] a stay must make out a clear case of
> hardship or inequity in being required to go forward, if there
> is even a fair possibility that the stay for which he prays will
> work damage to someone else.  Only in rare circumstances
> will a litigant in one cause be compelled to stand aside while
> a litigant in another settles the rule of law that will define
> the rights of both.

*Landis*, 299 U.S. at 255.

The Ninth Circuit has refined the *Landis* standard with the

following factors courts should consider: (1) generally, "stays should not

be indefinite in nature" and "should not be granted unless it appears

likely the other proceeding will be concluded within a reasonable

time[,]" *Dependable Highway*, 498 F.3d at 1066 (*citing Leyva v. Certified

Grocers of California, Ltd.*, 593 F.2d 857, 864 (9th Cir. 1979)); (2) courts

more appropriately enter stay orders where a party seeks only damages,

does not allege continuing harm, and does not seek injunctive or

declaratory relief since a stay would result only in delay in monetary

recovery, *Lockyer*, 398 F.3d at 1110 (citing *CMAX, Inc. v. Hall*, 300 F.2d

265, 268-69 (9th Cir. 1962)); (3) stays may be appropriate if resolution

of issues in the other proceeding would assist in resolving the

proceeding sought to be stayed, *id.* at 1110–1111 (citing *CMAX*, 300

F.2d at 269); and (4) stays may be appropriate for courts' docket

efficiency and fairness to the parties pending resolution of independent

proceedings that bear upon the case, "whether the separate proceedings

are judicial, administrative, or arbitral in character, and [such stays do]

not require that the issues in such proceedings are necessarily

controlling of the action before the court." *Id.* at 1111 (citing *Leyva*, 593

F.2d at 863–864).

### C.  <u>DISCUSSION</u>

While the FAA instructs courts to stay disputes covered by an

arbitration clause until after the arbitration has been conducted, the

parties here are not moving to compel arbitration or to involve WSB in

the current arbitration. The commercial guaranties at issue do not

contain arbitration clauses. *ECF 18-1.*

This action is based on WSB's claims to payment under the

Commercial Guaranty Agreements that the Moving Defendants each

signed.  The arbitration, however, involves the Moving Defendants'

A8

claims for compensatory and incidental damages against respondents –
who are not parties before the Court in this action.  Although the
arbitration apparently involves claims which relate to transactions
pertaining to the construction of the ambulatory surgery center in
Billings, Montana, the Moving Defendants have not shown that the
arbitration would be hindered by further proceedings in this case.  The
FAA does not require a stay.

Finding that a stay under the FAA is inapplicable, the Court next
has considered whether a discretionary stay is appropriate. Based on
the *Landis* factors, the Court concludes that a stay would be
inappropriate for three reasons.  First, the stay requested by the
Defendants would be indefinite in nature.  The arbitration was already
extended once (*ECF 24 at 6*) and there is no specific timeframe for a
resolution.  *See ECF 24-1*.  WSB is not a party to the arbitration, yet a
stay would indefinitely prevent WSB from seeking resolution of its
claims here.  Second, the resolution of the arbitration will not resolve
any disputed issues in this case. The arbitration will not alter the
Moving Defendants' obligations under the Guarantee Agreements.
Finally, while this case does involve monetary damages alone, efficiency
and fairness weigh in favor of denying the stay.

**A9**

Thus, the Moving Defendants have not met their burden of demonstrating that a stay is necessary or advisable in this case. Therefore, it will be recommended that the motion to stay this action be denied.

## II.   MOTION FOR SUMMARY JUDGMENT

### A.   PARTIES' ARGUMENTS

WSB argues that it is entitled to summary judgment against Schneider on the first count in the Complaint.  It argues that the Guaranty language is unambiguous and the law mandates entry of summary judgment.  Specifically, WSB argues that in its Commercial Guaranty, Schneider "absolutely and unconditionally guarantees full and punctual payment and satisfaction of its Share of the Indebtedness." *ECF 13* at 5. WSB argues that Schneider contractually agreed WSB could look to Schneider for repayment irrespective of any other sources of repayment, and that only amounts actually paid by others would operate to reduce the debt.  *ECF 13* at 6. WSP argues it is entitled, as a matter of law, to recover 28.75% of unpaid indebtedness from Schneider as a result of the Guaranty. *ECF 13* at 6–7.

Finally, WSB argues that even though Schneider's Answer to the Complaint suggests that Schneider meant to guarantee the debt of

another entity, that argument should be rejected. It argues that the agreement is clear and that because the unambiguous agreement was reduced to writing, the Court cannot look to extrinsic evidence in determining the intent of Schneider.

## B.  SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable fact-finder to return a verdict for the nonmoving party. *Id.* If the moving party meets its initial responsibility, the burden then shifts to the opposing party to

establish that a genuine issue of fact exists. *Matsushita Elec. Indus.*

*Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

### C.   <u>DISCUSSION</u>

Under applicable Montana law, the construction and

interpretation of a contract is a question of law. *Corp. Air v. Edwards*

*Jet Ctr.*, 190 P.3d 1111, 1120 (Mont. 2008). Once a contract is reduced

to writing, the intention of the parties is to be ascertained from the

writing alone, where possible. M.C.A. § 28–3–303. The language of a

contract is to govern its interpretation if the language is clear and

explicit and does not involve an absurdity. M.C.A. § 28–3–401.

Whether there is ambiguity in a contract is also a question of law.

*Corp. Air*, 190 P.3d at 1121. Ambiguity must be determined on an

objective basis, and mere disagreement as to the interpretation of a

written instrument is not sufficient to create an ambiguity. *Id.* Absent

ambiguity, the Court must apply the language as written. *Id.*

The Schneider Guaranty clearly lists the borrower as Omni

Funding Corp., the Lender as Western Security Bank, and the

Guarantor as Schneider Limited Partnership. *ECF 15-1* at 1. The

Guaranty states that the Guarantor, Schneider, "absolutely and

unconditionally guarantees full and punctual payment and satisfaction

of Guarantor's Share of the Indebtedness of Borrower to Lender, and

the performance and discharge of all Borrower's obligations under the

Note and Related Documents." *Id.*  Additionally, the agreement

specifies that:

> This is a guaranty of payment and performance and not of
> collection, so Lender can enforce this Guaranty against
> Guarantor even when Lender has not exhausted Lender's
> remedies against anyone else obligated to pay the
> Indebtedness or against any collateral securing the
> Indebtedness, this Guaranty or any other guaranty of the
> Indebtedness.
>      * * * * *
> Guarantor's Share of the Indebtedness will only be reduced
> by sums actually paid by Guarantor under this Guaranty,
> but will not be reduced by sums from any other source
> including, but not limited to, sums realized from any
> collateral securing the Indebtedness or this Guaranty, or
> payments by anyone other than Guarantor . . . . Lender has
> the sole and absolute discretion to determine how sums shall
> be applied among guaranties of the Indebtedness.

*Id.* As a result of the language in the Guaranty, WSB argues that it is

entitled to recover 28.75% of the unpaid indebtedness from Schneider

under the Guaranty.  Schneider has not responded to WSB's motion.

Schneider, in its Answer to the Complaint, states that "the intent

of the guaranty was to guarantee the debts of ONI LLC, and not OMNI

Funding Corp." *ECF 5* at ¶18.  But Schneider has not raised any

genuine issues of material fact by way of a response brief or a

Statement of Disputed Facts. *See Local Rule 56.1(b).*  The contract

-13-

**A13**

explicitly states the Borrower's name, Omni Funding Corp. *ECF 15-1* at

1. Schneider has failed to provide any evidence demonstrating

ambiguity, and the language of the agreement is clear as to the identity

of the parties. Thus, the Court recommends that WSB's motion for

partial summary judgment on liability be granted.

## III.  CONCLUSION

Based on the foregoing,

IT IS RECOMMENDED that Defendants' Motion to Stay Action

Pending Arbitration (*ECF 17*) be DENIED.

IT IS FURTHER RECOMMENDED that WSB's motion for partial

summary judgment on liability (*ECF 12*) be GRANTED.

NOW, THEREFORE, IT IS ORDERED that the Clerk shall serve

a copy of the Findings and Recommendation of United States

Magistrate Judge upon the parties. The parties are advised that

pursuant to 28 U.S.C. § 636, any objections to the findings and

recommendation must be filed with the Clerk of Court and copies

served on opposing counsel within fourteen (14) days after entry hereof,

or objection is waived.

DATED this 6th day of May, 2015.

/s/ *Carolyn S. Ostby*
United States Magistrate Judge

-14-

**A14**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION



| | |
|---|---|
| WESTERN SECURITY BANK, A Division of Glacier Bank, | CV 15-10-BLG-SPW-CSO |
| Plaintiff, | |
| vs. | OPINION and ORDER |
| SCHNEIDER LIMITED PARTNERSHIP; JAY WINZENREID, M.D.; STEPHEN EMERY; and BIG HORN BASIN BONE AND JOINT, LLC, | |
| Defendants. | |

Plaintiff Western Security Bank ("Western Security") moved for summary judgment against Defendant Schneider Limited Partnership ("Schneider"). Defendants Jay Winzenreid, Stephen Emery, and Big Horn Basin Bone and Joint (collectively "Wyoming Doctors") moved to stay this action pending arbitration between the Wyoming Doctors and Meridian Surgical Partners ("Meridian"), who is not a party to this suit. On May 6, 2015, United States Magistrate Judge Carolyn Ostby issued Findings and Recommendations on the pending motions. Judge Ostby recommends that this Court grant Western Security's Motion for Summary Judgment and deny the Wyoming Doctors' Motion to Stay Proceedings. For reasons discussed below, this Court adopts Judge Ostby's Finding and

1

Recommendations in full. Because the parties are familiar with the procedural and factual background of this case, it will not be restated here.

## I. Western Security's Motion for Partial Summary Judgment

Western Security moved for summary judgment as to liability against Schneider. Schneider did not respond. Judge Ostby addressed the motion's merits and determined that the undisputed material facts establish that Western Security is entitled to judgment against Schneider.

Pursuant to 28 U.S.C. § 636(b)(1), Schneider was required to file written objections within 14 days of the filing of Judge Ostby's Findings and Recommendations. Schneider did not file any objections. When neither party objects, this Court reviews Judge Ostby's conclusions for clear error. Clear error exists if the Court is left with a "definite and firm conviction that a mistake has been committed." *United States v. Syrax,* 235 F.3d 422, 427 (9th Cir. 2000). After reviewing the Findings and Recommendations, this Court does not find that Judge Ostby committed clear error. Therefore, this Court grants Western Security's Motion for Partial Summary Judgment.

## II. The Wyoming Doctors' Motion to Stay Proceedings

The Wyoming Doctors argue that although Western Security was not a signatory to the arbitration agreements, this case should be stayed while the Wyoming Doctors pursue arbitration against Meridian. The Wyoming Doctors

advance three alternative arguments in support of their motion: (1) Section 3 of the Federal Arbitration Act ("FAA") compels a stay; (2) this Court should apply the Fifth Circuit's standard and stay the case; and (3) this Court should exercise its discretion and stay the case. Judge Ostby disagreed and recommends that this Court deny the Motion to Stay Proceedings. The Wyoming Doctors timely objected and are therefore entitled to de novo review of the specified findings or recommendations to which they object. 28 U.S.C. § 636(b)(1).

A. Stay under § 3 of the FAA

The FAA requires district courts to stay an action if the issue "is referable to arbitration" under an arbitration agreement. 9 U.S.C. § 3. Nonsignatories to an arbitration agreement are not categorically barred from a stay under § 3. *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009). Instead, a nonsignatory may be subject to a stay under § 3 if it is bound to the arbitration agreement by "traditional principles of state law." *Rajagopalan v. NoteWorld, LLC*, 718 F.3d 844, 847 (9th Cir. 2013) (quoting *Arthur Anderson*, 556 U.S. at 631). (citation omitted).

Here, the Wyoming Doctors argue that Western Security is bound to the arbitration agreements between the Wyoming Doctors and Meridian under theories of (1) incorporation by reference, (2) third-party beneficiary, and (3) equitable estoppel. *See* Doc. 31 at 5. The Wyoming Doctors' arguments are unique, in that

3

they are merely seeking a stay and not trying to compel Western Security to arbitrate its claims.  Nonetheless, the Court will briefly address each argument.

### i. Incorporation by reference

The Wyoming Doctors argue that Western Security incorporated the arbitration agreements into the Business Loan Agreement.  The Wyoming Doctors cite to a section entitled "Binding Effect," where the Business Loan Agreement states:

> This Agreement, the Note, all Security Agreements (if any), and all Related Documents <u>are binding upon the signers thereof</u>, as well as upon their successors, representatives and assigns, and are legally enforceable in accordance with their respective terms.

(Doc. 18-11 at 2) (emphasis added).  The Wyoming Doctors allege that among the "Related Documents" are the arbitration agreements between the Wyoming Doctors and Meridian.  The Wyoming Doctors continue that this incorporated by reference the arbitration agreements into the Business Loan Agreement.  The Court reads the Business Loan Agreement differently than the Wyoming Doctors.

The "Binding Effect" subsection is located under the section entitled "Representations and Warranties."  (*Id*. at 1).  The section starts off with, "Borrower represents and warrants to Lender [Western Security] as follows…" (*Id*.).  What follows are, as one might guess, numerous representations and warranties made by the borrower.  Included is the representation that all "…Related Documents are binding upon the signers thereof."  (*Id*. at 2).

4

Even assuming that the arbitration agreements between the Wyoming

Doctors and Meridian are included as "Related Documents," the Business Loan

Agreement does not make them binding to Western Security.  Instead, the

"Binding Effect" subsection is only a representation by the borrower that the

arbitration agreements are legally enforceable against those who signed them.  By

the plain language of the Business Loan Agreement, Western Security did not bind

itself to any arbitration agreement.  Mere references to arbitration agreements do

not render them enforceable against Western Security.

### ii. Third-party beneficiary

The Wyoming Doctors argue that although it was not a party to the

Operating Agreement (Doc. 18-5) and the Management Services Agreement (Doc.

18-6), Western Security is bound as a third-party beneficiary.  The Court disagrees.

Under Delaware law,[1] a third-party beneficiary is created when:

(i) [T]he contracting parties must have intended that the third party
beneficiary benefit from the contract, (ii) the benefit must have been
intended as a gift or in satisfaction of a pre-existing obligation to that
person, and (iii) the intent to benefit the third party must be a material
part of the parties' purpose in entering into the contract.

---

[1] Both the Operating Agreement and the Management Services Agreement
contained choice-of-law provisions that the agreements shall be construed
according to Delaware law.  (Docs. 18-5 at 31 and 18-6 at 9).

*Comrie v. Enterasys Networks, Inc.*, 2004 WL 293337, at *3 (Del. Ch. Feb. 17, 2004). Without considering the first and second elements, the Court finds that the third element is dispositive. When the Wyoming Doctors and Meridian entered into the Operating Agreement and Management Services Agreement, a material part of their purpose was not to benefit Western Security. The signatories did not sign those documents with the primary goal of raising money for the bank. Instead, the material purpose of the agreements was to establish their business. Western Security was not a third-party beneficiary.

### iii. Equitable Estoppel

Finally, the Wyoming Doctors argue that this Court should apply the doctrine of equitable estoppel. "Equitable estoppel precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes." *Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006) (internal quotation omitted). In the arbitration context, two types of equitable estoppel may apply. *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1046 (9th Cir. 2009). First, "a nonsignatory may be held to an arbitration clause where the nonsignatory knowingly exploits the agreement containing the arbitration clause despite having never signed the agreement." *Id.* (internal quotation omitted). Second, a signatory and a nonsignatory may be bound to an arbitration agreement "because of the close relationship between the entities

6

A20

involved, as well as the relationship of the alleged wrongs to the non-signatory's obligations and duties in the contract and the fact that the claims were intertwined with the underlying contractual obligations." *Id.* (internal quotation omitted).

The Court finds that neither situation applies here. First, the Court finds no evidence that Western Security knowingly exploited the arbitration agreements between Meridian and the Wyoming Doctors. Second, Western Security's claims against the Wyoming Doctors are not "intertwined" with the Wyoming Doctor's arbitral claims against Meridian. In the arbitration, the Wyoming Doctors argue Meridian fraudulently induced them into moving forward with financing. In this case, Western Security seeks to recover from the Wyoming Doctors in accordance with their personal guaranties. While they generally arise from the same transactions, the arbitration claims and this litigation are not so intertwined to invoke the doctrine of equitable estoppel.

B. The Fifth Circuit's standard

The Wyoming Doctors urge this Court to apply the standard set forth by the Fifth Circuit and stay this case pending the arbitration between Meridian and the Wyoming Doctors. "In some cases, of course, it may be advisable to stay litigation among the non-arbitrating parties pending the outcome of the arbitration. That decision is one left to the district court...as a matter of its discretion to control its docket." *Moses H. Cone Meml. Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 21 n.

7

A21

23 (1983). The Ninth Circuit has not squarely addressed when a district court should order a stay, as opposed to compelling arbitration, in a case involving both signatories and nonsignatories. *CopyTele, Inc. v. AU Optronics Corp.*, 2013 WL 3458162 at *1 n. 2 (N.D. Cal. 2013). Several district courts in our circuit instead look to guidance from the Fifth Circuit. *See Amisil Holdings Ltd. v. Clarium Capital Mgt.*, 622 F. Supp. 2d 825, 842 (N.D. Cal. 2007) and *E. W. Bank v. Bingham*, 992 F. Supp. 2d 1130, 1135 (W.D. Wash. 2014). This Court has also previously adopted the Fifth Circuit's test. *Combined Insurance Company of America v. Jessica Hubley, et al.*, CV 14-72-BLG-SPW (D. Mont. Sept. 11, 2014).

In the Fifth Circuit, "if a suit against a nonsignatory is based upon the same operative facts and is inherently inseparable from the claims against a signatory, the trial court has discretion to grant a stay if the suit would undermine the arbitration proceedings and thwart the federal policy in favor of arbitration." *Hill v. G E Power Sys., Inc.*, 282 F.3d 343, 347 (5th Cir. 2002). The Fifth Circuit reasons that if a case proceeds as to nonsignatories, then the litigation may destroy the signatories' right to a meaningful arbitration. *Waste Mgt., Inc. v. Residuos Industriales Multiquim, S.A. de C.V.*, 372 F.3d 339, 343 (5th Cir. 2004). To grant a stay as to non-signatories, the district court must balance the following factors:

> 1) the arbitrated and litigated disputes must involve the same operative facts; 2) the claims asserted in the arbitration and litigation must be 'inherently inseparable'; and 3) the litigation must have a 'critical impact' on the arbitration.

A22

*Id.*

The Fifth Circuit applies this test to cases brought by signatories against nonsignatories. *Id.*; *see also Hill*, 282 F.3d at 347. Even putting aside that Western Security is a nonsignatory bringing claims against signatories, the Fifth Circuit's test is not met here. As discussed above, the claims asserted in arbitration and this litigation are not "inherently inseparable." In addition, the litigation does not have a "critical impact" on the arbitration. In the arbitration, the Wyoming Doctors do not challenge the enforceability of the personal guaranties by Western Security. Instead, the Wyoming Doctors argue that fellow-signatory Meridian fraudulently induced them into signing the agreements. The result of this case will not impact the Wyoming Doctors' ability to pursue their arbitration claims against Meridian.

C. Discretionary stay under the *Landis* factors.

Finally, the Wyoming Doctors object to Judge Ostby's application of the *Landis* factors. This Court agrees with Judge Ostby's conclusions and declines to exercise its discretion to grant a stay. The Wyoming Doctors have not established "rare circumstances" or made a "clear case of hardship or inequity in being required to go forward." *Landis v. North American Co.*, 299 U.S. 248, 255 (1936). As discussed above, the arbitration and this litigation present separate issues by

A23

different parties.  The expense incurred during litigation is not sufficient by itself

to justify a stay.  The Court does not find any other reason to stay the case.

## III. Conclusion

For reasons discussed above, IT IS HEREBY ORDERED:

1. Judge Ostby's Findings and Recommendations (Doc. 30) are ADOPTED

IN FULL.

2. Western Security's Motion for Partial Summary Judgment (Doc. 12) is

GRANTED.

3. The Wyoming Doctors' Motion to Stay Action Pending Arbitration (Doc.

17) is DENIED.


DATED this 30th day of June, 2015.

Susan P. Watters
SUSAN P. WATTERS
United States District Judge

10

A24

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
### BILLINGS DIVISION



| | |
|---|---|
| WESTERN SECURITY BANK, A Division of Glacier Bank, | CV 15-10-BLG-SPW-CSO |
| Plaintiff, | |
| vs. | ORDER |
| SCHNEIDER LIMITED PARTNERSHIP; JAY WINZENREID, M.D.; STEPHEN EMERY; and BIG HORN BASIN BONE AND JOINT, LLC, | |
| Defendants. | |

Presently before the Court are Defendants Jay Winzenreid, Stephen Emery, and Big Horn Basin Bone and Joint's (collectively "Defendants") Motion for Leave of Court to File Motion for Reconsideration and their Motion to Alter or Amend Judgment. Pursuant to Local Rule 7.3(a), the Defendants must move the Court for permission to file a motion for reconsideration. The Court may grant the Defendants permission to file such a motion if they meet at least one of the following two criteria:

    (1)    (A) the facts or applicable law are materially different from the facts or applicable law that the parties presented to the Court before entry of the order for which reconsideration is sought, and

1

**A25**

> (B) despite the exercise of reasonable diligence, the party
> applying for reconsideration did not know such fact or law
> before entry of the order; or

> (2) new material facts emerged or a change of law occurred after entry
> of the order.

L.R. 7.3(b).  Parties are not allowed to repeat arguments previously made.  L.R.

7.3(c).

The Defendants claim that after this Court adopted Magistrate Judge Ostby's

Findings and Recommendations, they completed their review of discovery

provided by Meridian Surgical Partners.  The Defendants state that the result of

this review revealed new material evidence that would entitle them to a stay.

However, as indicated in Plaintiff Western Security Bank's response, the

Defendants had those materials since January 2015.  The Defendants' Motion to

Stay was filed on March 26, 2015.

The Court understands that the Defendants had a significant number of

documents to review.  However, the Defendants should have determined whether

they possessed relevant documents prior to filing the Motion to Stay.  The

Defendants cannot get a second bite of the apple based on the discovery of

documents they already had in their possession.

After reviewing the Defendants' motion and Western Security Bank's

response, the Court finds that the Defendants have not met the standard required of

L.R. 7.3(b).  The Court further finds that the Defendants' Motion to Alter or

2

Amend Judgment is an attempt to file a motion for reconsideration without seeking

leave from the Court.  Accordingly, IT IS HEREBY ORDERED that Defendants'

Motion for Leave of Court to File Motion for Reconsideration (Doc. 41) and

Motion to Alter or Amend Judgment (Doc. 45) are both DENIED.


DATED this 22nd day of September, 2015.

SUSAN P. WATTERS
United States District Judge

3

A27

Scott Stinson
Stinson Law Group, P.C.
421 West Mendenhall Street
Bozeman, MT 59715
Scott@StinsonLawyers.com
406.587.2179
Attorney for Defendants Winzenried, Emery and BHBB&J

## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MONTANA
### BILLINGS DIVISION

| | |
|---|---|
| WESTERN SECURITY BANK,<br>A Division of Glacier Bank,<br><br>Plaintiff,<br><br>vs.<br><br>SCHNEIDER LIMITED PARTNERSHIP;<br>JAY WINZENRIED, M.D.;<br>STEPHEN EMERY;<br>BIG HORN BASIN BONE<br>AND JOINT, LLC,<br>Defendants. | ) Cause No. 1:15-CV-00010-SPW-CSO<br>)<br>)<br>)<br>)<br>)    **NOTICE OF APPEAL**<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Pursuant to 9 U.S.C. § 16(a)(1)(A) and Federal Rules of Appellate Procedure

3(a)(1) and 4(a)(1)(A), notice is hereby given that Jay Winzenried, Stephen Emery

and Big Horn Basin Bone and Joint, LLC, Defendants in the above named case,

hereby appeal to the United States Court of Appeals for the Ninth Circuit from the

Opinion and Order of the United States District Court for the District of Montana,

Billings Division (Document #38), denying Defendants a stay, entered in this action

on June 30, 2015.

**A28**

Respectfully Submitted this 30th day of July, 2015.


/s/_____
SCOTT STINSON
Attorney for Defendants Winzenried, Emery, and
BHBB&J


CERTIFICATE OF SERVICE

I hereby certify that on July 30th 2015, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/ Scott Stinson
Counsel for Defendants Winzenried, Emery, and BHBB&J

Scott Stinson
Stinson Law Group, P.C.
421 West Mendenhall Street
Bozeman, MT 59715
Scott@StinsonLawyers.com
406.587.2179
Attorney for Defendants Winzenried, Emery and BHBB&J

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

---

| | |
|---|---|
| WESTERN SECURITY BANK,<br>A Division of Glacier Bank,<br><br>Plaintiff - Appellee,<br><br>vs.<br><br>SCHNEIDER LIMITED PARTNERSHIP,<br><br>Defendant,<br><br>and<br><br>JAY WINZENRIED, M.D.; STEPHEN EMERY; BIG HORN BASIN BONE AND JOINT, LLC,<br>Defendants - Appellants. | ) No. 15-35617<br>)<br>) D.C. No. 1:15-CV-00010-SPW-CSO<br>) U.S. District Court for Montana,<br>) Billings<br>)<br>)<br>) **APPELLANTS'**<br>) **AMENDED NOTICE**<br>) **OF APPEAL**<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

---

Pursuant to Ninth Circuit Court Rule 10-3.1, Defendants-Appellants Jay Winzenried, Stephen Emery and Big Horn Basin Bone and Joint, LLC (hereinafter, "the Appellant Wyoming Physicians" or "Appellant") do hereby notify Plaintiff-Appellee Western Security Bank (hereinafter, " Appellee WSB" or "Appellee") of the following:

**A30**

1.    Transcripts

Appellant Wyoming Physicians do not intend to order any transcripts from the District Court proceedings in the aforementioned case because there are no transcripts to be ordered. Appellant Wyoming Physicians will seek to have the entire record to-date brought before the Ninth Circuit.

2.    Issues on Appeal

This appeal concerns whether Appellee WSB, as a non-signatory to the arbitration agreements executed between the Appellant Wyoming Physicians and Meridian Surgical Partners, LLC ("Meridian"), can nonetheless be subjected to a mandatory stay request by the Appellant Wyoming Physicians pursuant to 9 U.S.C. § 3.

9 U.S.C. § 3 mandates a stay of the district court proceedings whenever such proceedings contain "any issue referable to arbitration under an agreement in writing for such arbitration…." *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624 (2009), holds that an arbitration agreement can be enforced "by and against" a non-signatory when "traditional principles of contract law" apply to bring the non-signatory within the scope of an arbitration agreement, as is the situation here against Appellee WSB.  *Id*.

The non-signatory can avail itself of issues arising from the arbitration agreement when it incorporates the arbitration agreement by reference into the contracts it seeks to enforce in the related proceeding, when it is a third-party

beneficiary of such arbitration agreement and when principles of equitable estoppel indicate that there are sufficiently intertwined issues arising between the federal proceedings and the related arbitration. The Appellant Wyoming Physicians assert that all three of the aforementioned circumstances apply in the present federal proceedings initiated by Appellee WSB.

Specifically, the Appellant Wyoming Physicians intend to raise the following issues in the Ninth Circuit Court of Appeals:

1) Did the district court err when it ruled that Appellee had not incorporated by reference an arbitration agreement into those contracts that it seeks to enforce against the Appellants?

2) Did the district court err when it ruled that Appellee was not a third-party beneficiary to an arbitration agreement of which the Appellants are bound?

3) Did the district court err when it ruled that the principles of equitable estoppel do not apply to Appellee, when Appellants had provided evidence of interdependent and concerted misconduct by both the non-signatory Appellee and the signatory Meridian in the pending arbitration?


Respectfully Submitted this 5th day of October, 2015.


/s/_____
SCOTT STINSON
Attorney for Defendants-Appellants Winzenried,
Emery, and BHBB&J

CERTIFICATE OF SERVICE

I hereby certify that on October 5, 2015, I electronically filed the foregoing

with the Clerk of the Court by using the CM/ECF system, which will send a notice

of electronic filing to all counsel of record.


/s/ Scott Stinson

Robert L. Sterup
Shane Coleman
Holland & Hart LLP
401 North 31st Street
Suite 1500
Billings, MT 59101-1277
Telephone: 406-252-2166
Fax: 406-252-1669
rlsterup@hollandhart.com
spcoleman@hollandhart.com
Attorneys for Plaintiff

## MONTANA FEDERAL DISTRICT COURT
### BILLINGS DIVISION

| | |
|---|---|
| WESTERN SECURITY BANK, A Division of Glacier Bank, <br><br> Plaintiff, <br><br> vs. <br><br> SCHNEIDER LIMITED PARTNERSHIP, JAY WINZENREID, M.D., STEPHEN EMERY, BIG HORN BASIN BONE AND JOINT, LLC, ANDREW BAKER, <br><br> Defendants. | Cause No. 1:15-CV-OOO1O-SPW-CSO <br><br><br><br><br> **AFFIDAVIT OF GREGG GLUECKERT IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT SCHNEIDER LIMITED PARTNERSHIP** |

STATE OF MONTANA )
: ss.
County of Yellowstone )

I, Gregg Glueckert, being first duly sworn, state as follows:

**A34**

1.     I am a Loan Office for Plaintiff Western Security Bank ("WSB") based in WSB's Billings, Montana offices.   I have personal knowledge of the statements made in this affidavit.

2.     In December 2011 WSB entered into loan agreements (the "Loan") with Meridian Surgical Partners, LLC ("Meridian") and Meridian affiliates Meridian Surgical Partners-Montana, LLC ("Meridian-Montana") and Omni Funding Corp. ("Omni"), together with defendants Schneider Limited Partnership ("SLP"), Andrew Baker, Daniel Mattson, Jay Winzenreid, Stephen Emery, and Big Horn Basin and Joint, LLC, (Winzenreid, Emery, and Big Horn collectively "the Physician-Investors").  WSB loaned more than $2.0 million for construction of an ambulatory surgical center in Billings, Montana (the "Billings ASC").  SLP, Baker, Mattson and the Physician-Investors, together with Meridian through Meridian-Montana (collectively the "Guarantors"), unconditionally guaranteed repayment of the Loan to WSB.

3.     SLP, together with the other Guarantors, executed an unconditional guaranty (the "Commercial Guaranty") of the debt to WSB, as follows:

| | |
|---|---|
| Meridian-Montana | 46.25% of all indebtedness |
| Schneider Limited Partnership | 28.75% of all indebtedness |
| Jay Winzenreid, M.D. | 12.50% of all indebtedness |
| Stephen Emery | 12.50% of all indebtedness |
| Big Horn Basin and Joint, LLC | 12.50% of all indebtedness |
| Andrew Baker | 6.25% of all indebtedness |
| Daniel Mattson | 6.25% of all indebtedness |

4.     WSB loaned funds to Omni.  An entity co-owned by the Guarantors ("ONISC") was contractually obligated to make payments to Omni in an amount equal

-2-

**A35**

to Omni's loan obligations to WSB. Omni defaulted on the Loan in September 2013. As of loan default the unpaid debt to WSB exceeded $1.9 million.

5.      WSB brought suit against Meridian and Omni/Meridian-Montana in this Court (the "Meridian Litigation"). WSB and Meridian/ Meridian-Montana/Omni entered into a settlement agreement. Under the settlement, the Meridian entities agreed to pay 46.25% of the unpaid debt at that time.

6.      Daniel Mattson has acknowledged his obligation as Guarantor for 6.25% of the unpaid debt and has entered into a settlement agreement with WSB. Andrew Baker has acknowledged his obligation as Guarantor for 6.25% of the unpaid debt and has entered into a settlement agreement with WSB.

7.      Exhibit 1 in support of WSB's motion for summary judgment on its claim against SLP is a true and correct copy of the Commercial Guaranty executed by SLP.

8.      WSB has made demand upon SLP for payment of amounts due under the Commercial Guaranty. SLP has declined to make payment.

Further affiant sayeth not.

DATED this _10th_ day of March, 2015.

_____
Gregg Glueckert

SUBSCRIBED AND SWORN TO before me this _10th_ day of March, 2015.

_____
DAREN B. TOMLINSON
[Print Name]
Notary Public for the State of _Montana_
Residing at _Billings_
My Commission Expires: _April 30, 2016_

(SEAL)

DAREN B. TOMLINSON
NOTARY PUBLIC for the
State of Montana
Residing at Billings, Montana
My Commission Expires
April 30, 2016

-3-

**A36**

EXHIBIT

_A_

tabbies®

# COMMERCIAL GUARANTY

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| | | | | 4A / 200 | | 059 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** OMNI FUNDING CORP.
c/o GLOBAL SECURITIZATION SERVICES, LLC
68 SOUTH SERVICE ROAD, STE 120
MELVILLE, NY 11747

**Lender:** WESTERN SECURITY BANK
DOWNTOWN BROADWAY BRANCH
2812 FIRST AVENUE NORTH
PO BOX 2508
BILLINGS, MT 59103
(406) 371-8200

**Guarantor:** BIG HORN BASIN BONE AND JOINT, LLC
720 LINDSAY LN STE C
CODY, WY 82414

**CONTINUING GUARANTEE OF PAYMENT AND PERFORMANCE.** For good and valuable consideration, Guarantor absolutely and unconditionally guarantees full and punctual payment and satisfaction of Guarantor's Share of the Indebtedness of Borrower to Lender, and the performance and discharge of all Borrower's obligations under the Note and the Related Documents. This is a guaranty of payment and performance and not of collection, so Lender can enforce this Guaranty against Guarantor even when Lender has not exhausted Lender's remedies against anyone else obligated to pay the Indebtedness or against any collateral securing the Indebtedness, this Guaranty or any other guaranty of the Indebtedness. Guarantor will make any payments to Lender or its order, on demand, in legal tender of the United States of America, in same-day funds, without set-off or deduction or counterclaim, and will otherwise perform Borrower's obligations under the Note and Related Documents. Under this Guaranty, Guarantor's obligations are continuing.

**INDEBTEDNESS.** The word "Indebtedness" means "Indebtedness" as defined in the Loan Agreement.

If Lender presently holds one or more guaranties, or hereafter receives additional guaranties from Guarantor, Lender's rights under all guaranties shall be cumulative. This Guaranty shall not (unless specifically provided below to the contrary) affect or invalidate any such other guaranties. Guarantor's liability will be Guarantor's aggregate liability under the terms of this Guaranty and any such other unterminated guaranties.

**GUARANTOR'S SHARE OF THE INDEBTEDNESS.** The words "Guarantor's Share of the Indebtedness" as used in this Guaranty mean 12.500% of all unpaid Indebtedness outstanding from time to time not to exceed Three Hundred Seventy Seven Thousand Five Hundred Eighty Two & 25/100 Dollars ($377,582.25); provided, Guarantor's Share of the Indebtedness shall be reduced to 10.000% of all unpaid indebtedness outstanding from time to time not to exceed Three Hundred Two Thousand Sixty Five and 80/100 Dollars ($302,065.80) as of December 31, 2014 if on such date Company has achieved a Debt Service Coverage Ratio of not less than 1.0 to 1.0 as determined from Company's 2014 tax return provided as required under the terms of the Loan Agreement.

Lender shall determine Guarantor's Share of the Indebtedness when Lender makes demand on Guarantor. After a determination, Guarantor's Share of the Indebtedness will only be reduced by sums actually paid by Guarantor under this Guaranty, but will not be reduced by sums from any other source including, but not limited to, sums realized from any collateral securing the Indebtedness or this Guaranty, or payments by anyone other than Guarantor, or reductions by operation of law, judicial order or equitable principles. Lender has the sole and absolute discretion to determine how sums shall be applied among guaranties of the Indebtedness.

The above limitation on liability is not a restriction on the amount of the Note of Borrower to Lender either in the aggregate or at any one time.

**CONTINUING GUARANTY.** THIS IS A "CONTINUING GUARANTY" UNDER WHICH GUARANTOR AGREES TO GUARANTEE THE FULL AND PUNCTUAL PAYMENT, PERFORMANCE AND SATISFACTION OF THE GUARANTOR'S SHARE OF THE INDEBTEDNESS OF BORROWER TO LENDER, NOW EXISTING OR HEREAFTER ARISING OR ACQUIRED, ON A CONTINUING BASIS. ACCORDINGLY, ANY PAYMENTS MADE ON THE INDEBTEDNESS WILL NOT DISCHARGE OR DIMINISH GUARANTOR'S OBLIGATIONS AND LIABILITY UNDER THIS GUARANTY FOR ANY REMAINING AND SUCCEEDING INDEBTEDNESS EVEN WHEN ALL OR PART OF THE OUTSTANDING INDEBTEDNESS MAY BE A ZERO BALANCE FROM TIME TO TIME.

**DURATION OF GUARANTY.** This Guaranty and Guarantor's obligations and liability hereunder shall remain in full force and effect until such time as Borrower's Indebtedness is fully paid and satisfied, at which time Lender shall provide Guarantor a written cancellation instrument in favor of Guarantor. It is anticipated that fluctuations may occur in the aggregate amount of Borrower's Indebtedness guaranteed under this Guaranty and it is specifically acknowledged and agreed to by Guarantor that reductions in the amount of Borrower's Indebtedness, even to zero ($0.00) dollars, unless the Borrower's Indebtedness is fully paid and satisfied.

**GUARANTOR'S AUTHORIZATION TO LENDER.** Guarantor authorizes Lender, either before or after any revocation hereof, **without notice or demand and without lessening Guarantor's liability under this Guaranty, from time to time:** (A) prior to revocation as set forth above, to make one or more additional secured or unsecured loans to Borrower, to lease equipment or other goods to Borrower, or otherwise to extend additional credit to Borrower; (B) to alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of the Indebtedness or any part of the Indebtedness, including increases and decreases of the rate of interest on the Indebtedness; extensions may be repeated and may be for longer than the original loan term; (C) to take and hold security for the payment of this Guaranty or the Indebtedness, and exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any such security, with or without the substitution of new collateral; (D) to release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; (E) to determine how, when and what application of payments and credits shall be made on the Indebtedness and; (F) to apply such security and direct the order or manner of sale thereof, including without limitation, any nonjudicial sale permitted by the terms of the controlling security agreement or deed of trust, as Lender in its discretion may determine.

**GUARANTOR'S REPRESENTATIONS AND WARRANTIES.** Guarantor represents and warrants to Lender that (A) no representations or agreements of any kind have been made to Guarantor which would limit or qualify in any way the terms of this Guaranty; (B) this Guaranty is executed at Borrower's request and not at the request of Lender; (C) Guarantor has full power, right and authority to enter into this Guaranty; (D) the provisions of this Guaranty do not conflict with or result in a default under any physical agreement or other instrument binding upon Guarantor and do not result in a violation of any law, regulation, court decree or order applicable to Guarantor; (E) Guarantor has not and will not, without the prior written consent of Lender, sell, lease, assign, encumber, hypothecate, transfer, or otherwise dispose of all or substantially all of Guarantor's assets; (F) upon Lender's request, Guarantor will provide to Lender financial and credit information in form acceptable to Lender, and all such financial information which currently has been, and all future financial information which will be provided to Lender is and will be true and correct in all material respects and fairly present Guarantor's financial condition as of the dates the financial information is provided; (G) no litigation, claim, investigation, administrative proceeding or similar action (including those for unpaid taxes) against Guarantor is pending or to the knowledge of the Guarantor threatened which if adversely determined would have material adverse effect; (H) Lender has made no representation to Guarantor as to the creditworthiness of Borrower; and (I) Guarantor has established adequate means of obtaining from Borrower on a continuing basis information regarding Borrower's financial condition. Guarantor agrees to keep adequately informed from such means of any facts, events, or circumstances which might in any way affect Guarantor's risks under this Guaranty, and Guarantor further agrees that, absent a request for information, Lender shall have no obligation to disclose to Guarantor any information or documents acquired by Lender in the course of its relationship with Borrower.

**GUARANTOR'S WAIVERS.** Except as prohibited by applicable law, Guarantor waives any right to require Lender (A) to continue lending money or to extend other credit to Borrower; (B) to make any presentment, protest, demand, or notice of any kind, including notice of any nonpayment of the Indebtedness or of any nonpayment related to any collateral, or notice of any action or nonaction on the part of Borrower, Lender, any surety, endorser, or other guarantor in connection with the Indebtedness or in connection with the creation of new or additional loans or obligations; (C) to resort for payment or to proceed directly or at once against any person, including Borrower or any other guarantor; (D) to proceed directly against or exhaust any collateral held by Lender from Borrower, any other guarantor, or any other person; (F) to give notice of the terms, time, and place of any public or private sale of personal property security held by Lender from Borrower or to comply with any other applicable provisions of the Uniform Commercial Code; (F) to pursue any other

remedy within Lender's power; or (G) to commit any act or omission of any kind, or at any time, with respect to any matter whatsoever.

Guarantor also waives any and all rights or defenses based on suretyship or impairment of collateral including, but not limited to, any rights or defenses arising by reason of (A) any "one action" or "anti-deficiency" law or any other law which may prevent Lender from bringing any action, including a claim for deficiency, against Guarantor, before or after Lender's commencement or completion of any foreclosure action, either judicially or by exercise of a power of sale; (B) any election of remedies by Lender which destroys or otherwise adversely affects Guarantor's subrogation rights or Guarantor's rights to proceed against Borrower for reimbursement, including without limitation, any loss of rights Guarantor may suffer by reason of any law limiting, qualifying, or discharging the Indebtedness; (C) any disability or other defense of Borrower, of any other guarantor, or of any other person, or by reason of the cessation of Borrower's liability from any cause whatsoever, other than payment in full in legal tender, of the Indebtedness; (D) any right to claim discharge of the Indebtedness on the basis of unjustified impairment of any collateral for the Indebtedness; (E) any statute of limitations, if at any time any action or suit brought by Lender against Guarantor is commenced, there is outstanding Indebtedness which is not barred by any applicable statute of limitations; or (F) any defenses given to guarantors at law or in equity other than actual payment and performance of the Indebtedness. If payment is made by Borrower, whether voluntarily or otherwise, or by any third party, on the Indebtedness and thereafter Lender is forced to remit the amount of that payment to Borrower's trustee in bankruptcy or to any similar person under any federal or state bankruptcy law or law for the relief of debtors, the Indebtedness shall be considered unpaid for the purpose of the enforcement of this Guaranty.

Guarantor further waives and agrees not to assert or claim at any time any deductions to the amount guaranteed under this Guaranty for any claim of setoff, counterclaim, counter demand, recoupment or similar right, whether such claim, demand or right may be asserted by the Borrower, the Guarantor, or both.

**GUARANTOR'S UNDERSTANDING WITH RESPECT TO WAIVERS.** Guarantor warrants and agrees that each of the waivers set forth above is made with Guarantor's full knowledge of its significance and consequences and that, under the circumstances, the waivers are reasonable and not contrary to public policy or law. If any such waiver is determined to be contrary to any applicable law or public policy, such waiver shall be effective only to the extent permitted by law or public policy.

**SUBORDINATION OF BORROWER'S DEBTS TO GUARANTOR.** Guarantor agrees that the Indebtedness, whether now existing or hereafter created, shall be superior to any claim that Guarantor may now have or hereafter acquire against Borrower, whether or not Borrower becomes insolvent. Guarantor hereby expressly subordinates any claim Guarantor may have against Borrower, upon any account whatsoever, to any claim that Lender may now or hereafter have against Borrower. In the event of insolvency and consequent liquidation of the assets of Borrower, through bankruptcy, by an assignment for the benefit of creditors, by voluntary liquidation, or otherwise, the assets of Borrower applicable to the payment of the claims of both Lender and Guarantor shall be paid to Lender and shall be first applied by Lender to the Indebtedness. Guarantor does hereby assign to Lender all claims which it may have or acquire against Borrower or against any assignee or trustee in bankruptcy of Borrower; provided however, that such assignment shall be effective only for the purpose of assuring to Lender full payment in legal tender of the Indebtedness guaranteed unless less Guaranty. If Lender so requests, any notes or credit agreements now or hereafter evidencing any debts or obligations of Borrower to Guarantor shall be marked with a legend that the same are subject to this Guaranty and shall be delivered to Lender. Guarantor agrees, and Lender is hereby authorized, in the name of Guarantor, from time to time to file financing statements and continuation statements and to execute documents and to take such other actions as Lender deems necessary or appropriate to perfect, preserve and enforce its rights under this Guaranty.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Guaranty:

**Amendments.** This Guaranty, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Guaranty. No alteration of or amendment to this Guaranty shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Attorneys' Fees; Expenses.** Guarantor agrees to pay upon demand all of Lender's reasonable external costs and expenses, including Lender's reasonable external attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Agreement. Lender may hire or pay someone else to help enforce this Agreement, and Guarantor shall pay the reasonable external costs and expenses of such enforcement. Costs and expenses include Lender's reasonable external attorneys' fees and legal expenses whether or not there is a lawsuit, including reasonable external attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Guarantor also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.** Caption headings in this Guaranty are for convenience purposes only and are not to be used to interpret or define the provisions of this Guaranty.

**Governing Law. This Guaranty will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Montana without regard to its conflicts of law provisions.**

**Choice of Venue.** If there is a lawsuit, Guarantor agrees upon Lender's request to submit to the jurisdiction of the State and U.S. District courts of YELLOWSTONE County, State of Montana, and any appellate courts thereof.

**Interpretation.** In all cases where there is more than one Borrower or Guarantor, then all words used in this Guaranty in the singular shall be deemed to have been used in the plural where the context and construction so require; and where there is more than one Borrower named in this Guaranty or when this Guaranty is executed by more than one Guarantor, the words "Borrower" and "Guarantor" respectively shall mean all and any one or more of them. The words "Guarantor," "Borrower," and "Lender" include the heirs, successors, assigns, and transferees of each of them. If a court finds that any provision of this Guaranty is not valid or should not be enforced, that fact by itself will not mean that the rest of this Guaranty will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Guaranty even if a provision of this Guaranty may be found to be invalid or unenforceable. If any one or more of Borrower or Guarantor are corporations, partnerships, limited liability companies, or similar entities, it is not necessary for Lender to inquire into the powers of Borrower or Guarantor or of the officers, directors, partners, managers, or other agents acting or purporting to act on their behalf, and any indebtedness made or created in reliance upon the professed exercise of such powers shall be guaranteed under this Guaranty.

**Notices.** Any notice required to be given under this Guaranty shall be given in writing, and, except for revocation notices by Guarantor, shall be effective when actually delivered, when actually received by telefacsimile or electronic mail (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Guaranty. All revocation notices by Guarantor shall be in writing and shall be effective upon delivery to Lender as provided in the section of this Guaranty entitled "DURATION OF GUARANTY." Any party may change its address for notices under this Guaranty by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Guarantor agrees to keep Lender informed at all times of Guarantor's current address. Unless otherwise provided or required by law, if there is more than one Guarantor, any notice given by Lender to any Guarantor is deemed to be notice given to all Guarantors.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Guaranty unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Guaranty shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Guaranty. No prior waiver by Lender, nor any course of dealing between Lender and Guarantor, shall constitute a waiver of any of Lender's rights or of any of Guarantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Guaranty, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Successors and Assigns.** Subject to any limitations stated in this Guaranty on transfer of Guarantor's interest, this Guaranty shall be binding upon and inure to the benefit of the parties, their successors and assigns.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Guaranty. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Guaranty that are defined in the Uniform Commercial Code shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Borrower.** The word "Borrower" means OMNI FUNDING CORP. and its successors and assigns.

**Company.** The word "Company" means ORTHOPAEDIC NEURO INSTITUTE SURGICAL CENTER, LLC and its successors and assigns.

**Debt Service Coverage Ratio.** The term "Debt Service Coverage Ratio" means the ratio, determined as of the end of each fiscal year of Company, beginning with the fiscal year ending December 31, 2013, of (i) the sum of net income, plus depreciation, interest, amortization and income taxes minus distributions by Company to its members to (ii) required principal and interest payments on the Indebtedness for such period.

A38

**Guarantor.** The word "Guarantor" means BIG HORN BASIN BONE AND JOINT, LLC and its successors and assigns.

**Guarantor's Share of the Indebtedness.** The words "Guarantor's Share of the Indebtedness" mean Guarantor's Indebtedness to Lender as more particularly described in this Guaranty.

**Guaranty.** The word "Guaranty" means this guaranty from Guarantor to Lender.

**Indebtedness.** The word "Indebtedness" means Borrower's Indebtedness to Lender under the Loan Agreement as more particularly described in this Guaranty.

**Lender.** The word "Lender" means WESTERN SECURITY BANK, its successors and assigns.

**Loan Agreement.** The term "Loan Agreement: means that certain Business Loan Agreement entered into by and between Borrower and Lender for a loan in the amount of up to $3,020,653.00 and dated December 12, 2011.

**Note.** The word "Note" means the promissory note executed by Borrower **in the original principal amount of $3,020,658.00** dated December 12, 2011, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement.

**Related Documents.** The words "Related Documents" shall have the meaning ascribed to such term in the Loan Agreement.

**Uniform Commercial Code.** The words "Uniform Commercial Code" mean the Uniform Commercial Code as now or hereafter adopted in the State of Montana; provided that if, by reason of mandatory provisions of law, the perfection or the effect of perfection or non-perfection of any security interest in any Collateral is governed by the Uniform Commercial Code as in effect in a jurisdiction other than Montana, the words "Uniform Commercial Code" mean the Uniform Commercial Code as in effect in such other jurisdiction for purposes of the provisions hereof relating to such perfection or the effect of perfection or non-perfection.

**EACH UNDERSIGNED GUARANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS GUARANTY AND AGREES TO ITS TERMS. IN ADDITION, EACH GUARANTOR UNDERSTANDS THAT THIS GUARANTY IS EFFECTIVE UPON GUARANTOR'S EXECUTION AND DELIVERY OF THIS GUARANTY TO LENDER AND THAT THE GUARANTY WILL CONTINUE UNTIL TERMINATED IN THE MANNER SET FORTH IN THE SECTION TITLED "DURATION OF GUARANTY". NO FORMAL ACCEPTANCE BY LENDER IS NECESSARY TO MAKE THIS GUARANTY EFFECTIVE. THIS GUARANTY IS DATED DECEMBER 12, 2011.**

[THE BALANCE OF THIS PAGE IS LEFT BLANK INTENTIONALLY.

THE SIGNATURE OF THE GUARANTOR IS FOUND ON THE NEXT PAGE]

**A39**

SIGNATURE PAGE TO COMMERCIAL GUARANTY OF BIG HORN BASIN BONE AND JOINT, LLC

GUARANTOR:

BIG HORN BASIN BONE AND JOINT, LLC

By: _____
FRANK H SCHMIDT, Manager of BIG HORN BASIN
BONE AND JOINT, LLC

LASER PRO Lending, Ver. 5.54.00.003  Copr. Harland Financial Solutions, Inc. 1997, 2011,  All Rights Reserved.  - MT  L:\CFI\LPL\E20.FC  TR-18490  PR-30 (M)

## COMMERCIAL GUARANTY

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| | | | | 4A / 200 | | 059 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.

Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** OMNI FUNDING CORP.
c/o GLOBAL SECURITIZATION SERVICES, LLC
68 SOUTH SERVICE ROAD, STE 120
MELVILLE, NY 11747

**Lender:** WESTERN SECURITY BANK
DOWNTOWN BROADWAY BRANCH
2812 FIRST AVENUE NORTH
PO BOX 2508
BILLINGS, MT 59103
(406) 371-8200

**Guarantor:** JAY WINZENREID, M.D.
1608 11TH STREET
CODY, WY 82414

**CONTINUING GUARANTEE OF PAYMENT AND PERFORMANCE.** For good and valuable consideration, Guarantor absolutely and unconditionally guarantees full and punctual payment and satisfaction of Guarantor's Share of the Indebtedness of Borrower to Lender, and the performance and discharge of all Borrower's obligations under the Note and the Related Documents. This is a guaranty of payment and performance and not of collection, so Lender can enforce this Guaranty against Guarantor even when Lender has not exhausted Lender's remedies against anyone else obligated to pay the Indebtedness or against any collateral securing the Indebtedness, this Guaranty or any other guaranty of the Indebtedness. Guarantor will make any payments to Lender or its order, on demand, in legal tender of the United States of America, in same-day funds, without set-off or deduction or counterclaim, and will otherwise perform Borrower's obligations under the Note and Related Documents. Under this Guaranty, Guarantor's obligations are continuing.

**INDEBTEDNESS.** The word "Indebtedness" means "Indebtedness" as defined in the Loan Agreement.

If Lender presently holds one or more guaranties, or hereafter receives additional guaranties from Guarantor, Lender's rights under all guaranties shall be cumulative. This Guaranty shall not (unless specifically provided below to the contrary) affect or invalidate any such other guaranties. Guarantor's liability will be Guarantor's aggregate liability under the terms of this Guaranty and any such other unterminated guaranties.

**GUARANTOR'S SHARE OF THE INDEBTEDNESS.** The words "Guarantor's Share" as used in this Guaranty mean 12.500% of all unpaid Indebtedness outstanding from time to time not to exceed Three Hundred Seventy Seven Thousand Five Hundred Eighty Two & 25/100 Dollars ($377,582.25); provided, Guarantor's Share of the Indebtedness shall be reduced to 10.000% of all unpaid Indebtedness outstanding from time to time not to exceed Three Hundred Two Thousand Sixty Five and 80/100 Dollars ($302,065.80) as of December 31, 2014 if on such date Company has achieved a Debt Service Coverage Ratio of not less than 1.0 to 1.0 as determined from Company's 2014 tax return provided as required under the terms of the Loan Agreement.

Lender shall determine Guarantor's Share of the Indebtedness when Lender makes demand on Guarantor. After a determination, Guarantor's Share of the Indebtedness will only be reduced by sums actually paid by Guarantor under this Guaranty, but will not be reduced by sums from any other source including, but not limited to, sums realized from any collateral securing the Indebtedness or this Guaranty, or payments by anyone other than Guarantor, or reductions by operation of law, judicial order or equitable principles. Lender has the sole and absolute discretion to determine how sums shall be applied among guaranties of the Indebtedness.

The above limitation on liability is not a restriction on the amount of the Note of Borrower to Lender either in the aggregate or at any one time.

**CONTINUING GUARANTY.** THIS IS A "CONTINUING GUARANTY" UNDER WHICH GUARANTOR AGREES TO GUARANTEE THE FULL AND PUNCTUAL PAYMENT, PERFORMANCE AND SATISFACTION OF THE GUARANTOR'S SHARE OF THE INDEBTEDNESS OF BORROWER TO LENDER, NOW EXISTING OR HEREAFTER ARISING OR ACQUIRED, ON A CONTINUING BASIS. ACCORDINGLY, ANY PAYMENTS MADE ON THE INDEBTEDNESS WILL NOT DISCHARGE OR DIMINISH GUARANTOR'S OBLIGATIONS AND LIABILITY UNDER THIS GUARANTY FOR ANY REMAINING AND SUCCEEDING INDEBTEDNESS EVEN WHEN ALL OR PART OF THE OUTSTANDING INDEBTEDNESS MAY BE A ZERO BALANCE FROM TIME TO TIME.

**DURATION OF GUARANTY.** This Guaranty and Guarantor's obligations and liability hereunder shall remain in full force and effect until such time as the Indebtedness is fully paid and satisfied, at which time Lender shall provide Guarantor a written cancellation instrument in favor of Guarantor. It is anticipated that fluctuations may occur in the aggregate amount of the Indebtedness guaranteed under this Guaranty and it is specifically acknowledged and agreed to by Guarantor that reductions in the amount of the Indebtedness, even to zero ($0.00) dollars, unless the Indebtedness is fully paid and satisfied.

**GUARANTOR'S AUTHORIZATION TO LENDER.** Guarantor authorizes Lender, either before or after any revocation hereof, **without notice or demand and without lessening Guarantor's liability under this Guaranty, from time to time:** (A)  prior to revocation as set forth above, to make one or more additional secured or unsecured loans to Borrower, to lease equipment or other goods to Borrower, or otherwise to extend additional credit to Borrower; (B) to alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of the Indebtedness or any part of the Indebtedness, including increases and decreases of the rate of interest on the Indebtedness; extensions may be repeated and may be for longer than the original loan term; (C) to take and hold security for the payment of this Guaranty or the Indebtedness, and exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any such security, with or without the substitution of new collateral; (D) to release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; (E) to determine how, when and what application of payments and credits shall be made on the Indebtedness and; (F) to apply such security and direct the order or manner of sale thereof, including without limitation, any nonjudicial sale permitted by the terms of the controlling security agreement or deed of trust, as Lender in its discretion may determine.

**GUARANTOR'S REPRESENTATIONS AND WARRANTIES.** Guarantor represents and warrants to Lender that (A) no representations or agreements of any kind have been made to Guarantor which would limit or qualify in any way the terms of this Guaranty; (B) this Guaranty is executed at Borrower's request and not at the request of Lender; (C) Guarantor has full power, right and authority to enter into this Guaranty; (D) the provisions of this Guaranty do not conflict with or result in a default under any material agreement or other material instrument binding upon Guarantor and do not result in a violation of any law, regulation, court decree or order applicable to Guarantor; (E) Guarantor has not and will not, without the prior written consent of Lender, sell, lease, assign, encumber, hypothecate, transfer, or otherwise dispose of all or substantially all of Guarantor's assets; (F) upon Lender's request, Guarantor will provide to Lender financial and credit information in form acceptable to Lender, and all such financial information which currently has been, and all future financial information which will be provided to Lender is and will be true and correct in all material respects and fairly present Guarantor's financial condition as of the dates the financial information is provided; (G) no litigation, claim, investigation, administrative proceeding or similar action (including those for unpaid taxes) against Guarantor is pending or to the knowledge of the Guarantor threatened which if adversely determined would have material adverse effect; (H) Lender has made no representation to Guarantor as to the creditworthiness of Borrower; and (I) Guarantor has established adequate means of obtaining from Borrower on a continuing basis information regarding Borrower's financial condition. Guarantor agrees to keep adequately informed from such means of any facts, events, or circumstances which might in any way affect Guarantor's risks under this Guaranty, and Guarantor further agrees that, absent a request for information, Lender shall have no obligation to disclose to Guarantor any information or documents acquired by Lender in the course of its relationship with Borrower.

**GUARANTOR'S WAIVERS.** Except as prohibited by applicable law, Guarantor waives any right to require Lender (A) to continue lending money or to extend other credit to Borrower; (B) to make any presentment, protest, demand, or notice of any kind, including notice of any nonpayment of the Indebtedness or of any nonpayment related to any collateral, or notice of any action or nonaction on the part of Borrower, Lender, any surety, endorser, or other guarantor in connection with the Indebtedness or in connection with the creation of new or additional loans or obligations; (C) to resort for payment or to proceed directly or at once against any person, including Borrower or any other guarantor; (D) to proceed directly against or exhaust any collateral held by Lender from Borrower, any other guarantor, or any other person; (E) to give notice of the terms, time, and place of any public or private sale of personal property security held by Lender from Borrower or to comply with any other applicable provisions of the Uniform Commercial Code; (F) to pursue any other remedy within Lender's power; or (G) to commit any act or omission of any kind, or at any time, with respect to any matter whatsoever.

**A41**

Guarantor also waives any and all rights or defenses based on suretyship or impairment of collateral including, but not limited to, any rights or defenses arising by reason of (A) any "one action" or "anti-deficiency" law or any other law which may prevent Lender from bringing any action, including a claim for deficiency, against Guarantor, before or after Lender's commencement or completion of any foreclosure action, either judicially or by exercise of a power of sale; (B) any election of remedies by Lender which destroys or otherwise adversely affects Guarantor's subrogation rights or Guarantor's rights to proceed against Borrower for reimbursement, including without limitation, any loss of rights Guarantor may suffer by reason of any law limiting, qualifying, or discharging the Indebtedness; (C) any disability or other defense of Borrower, of any other guarantor, or of any other person, or by reason of the cessation of Borrower's liability from any cause whatsoever, other than payment in full in legal tender, of the Indebtedness; (D) any right to claim discharge of the Indebtedness on the basis of unjustified impairment of any collateral for the Indebtedness; (E) any statute of limitations, if at any time any action or suit brought by Lender against Guarantor is commenced, there is outstanding Indebtedness which is not barred by any applicable statute of limitations; or (F) any defenses given to guarantors at law or in equity other than actual payment and performance of the Indebtedness. If payment is made by Borrower, whether voluntarily or otherwise, or by any third party, on the Indebtedness and thereafter Lender is forced to remit the amount of that payment to Borrower's trustee in bankruptcy or to any similar person under any federal or state bankruptcy law or law for the relief of debtors, the Indebtedness shall be considered unpaid for the purpose of the enforcement of this Guaranty.

Guarantor further waives and agrees not to assert or claim at any time any deductions to the amount guaranteed under this Guaranty for any claim of setoff, counterclaim, counter demand, recoupment or similar right, whether such claim, demand or right may be asserted by the Borrower, the Guarantor, or both.

**GUARANTOR'S UNDERSTANDING WITH RESPECT TO WAIVERS.** Guarantor warrants and agrees that each of the waivers set forth above is made with Guarantor's full knowledge of its significance and consequences and that, under the circumstances, the waivers are reasonable and not contrary to public policy or law. If any such waiver is determined to be contrary to any applicable law or public policy, such waiver shall be effective only to the extent permitted by law or public policy.

**SUBORDINATION OF BORROWER'S DEBTS TO GUARANTOR.** Guarantor agrees that the Indebtedness, whether now existing or hereafter created, shall be superior to any claim that Guarantor may now have or hereafter acquire against Borrower, whether or not Borrower becomes insolvent. Guarantor hereby expressly subordinates any claim Guarantor may have against Borrower, upon any account whatsoever, to any claim that Lender may now or hereafter have against Borrower. In the event of insolvency and consequent liquidation of the assets of Borrower, through bankruptcy, by an assignment for the benefit of creditors, by voluntary liquidation, or otherwise, the assets of Borrower applicable to the payment of the claims of both Lender and Guarantor shall be paid to Lender and shall be first applied by Lender to the Indebtedness. Guarantor does hereby assign to Lender all claims which it may have or acquire against Borrower or against any assignee or trustee in bankruptcy of Borrower; provided however, that such assignment shall be effective only for the purpose of assuring to Lender full payment in legal tender of the Indebtedness guaranteed under this Guaranty. If Lender so requests, any notes or credit agreements now or hereafter evidencing any debts or obligations of Borrower to Guarantor shall be marked with a legend that the same are subject to this Guaranty and shall be delivered to Lender. Guarantor agrees, and Lender is hereby authorized, in the name of Guarantor, from time to time to file financing statements and continuation statements and to execute documents and to take such other actions as Lender deems necessary or appropriate to perfect, preserve and enforce its rights under this Guaranty.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Guaranty:

**Amendments.** This Guaranty, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Guaranty. No alteration of or amendment to this Guaranty shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Attorneys' Fees; Expenses.** Guarantor agrees to pay upon demand all of Lender's reasonable external costs and expenses, including Lender's reasonable external attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Agreement. Lender may hire or pay someone else to help enforce this Agreement, and Guarantor shall pay the reasonable external costs and expenses of such enforcement. Costs and expenses include Lender's reasonable external attorneys' fees and legal expenses whether or not there is a lawsuit, including reasonable external attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Guarantor also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.** Caption headings in this Guaranty are for convenience purposes only and are not to be used to interpret or define the provisions of this Guaranty.

**Governing Law. This Guaranty will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Montana without regard to its conflicts of law provisions.**

**Choice of Venue.** If there is a lawsuit, Guarantor agrees upon Lender's request to submit to the jurisdiction of the State and U.S. District courts of YELLOWSTONE County, State of Montana, and any appellate courts thereof.

**Interpretation.** In all cases where there is more than one Borrower or Guarantor, then all words used in this Guaranty in the singular shall be deemed to have been used in the plural where the context and construction so require; and where there is more than one Borrower named in this Guaranty or when this Guaranty is executed by more than one Guarantor, the words "Borrower" and "Guarantor" respectively shall mean all and any one or more of them. The words "Guarantor," "Borrower," and "Lender" include the heirs, successors, assigns, and transferees of each of them. If a court finds that any provision of this Guaranty is not valid or should not be enforced, that fact by itself will not mean that the rest of this Guaranty will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Guaranty even if a provision of this Guaranty may be found to be invalid or unenforceable. If any one or more of Borrower or Guarantor are corporations, partnerships, limited liability companies, or similar entities, it is not necessary for Lender to inquire into the powers of Borrower or Guarantor or of the officers, directors, partners, managers, or other agents acting or purporting to act on their behalf, and any indebtedness made or created in reliance upon the professed exercise of such powers shall be guaranteed under this Guaranty.

**Notices.** Any notice required to be given under this Guaranty shall be given in writing, and, except for revocation notices by Guarantor, shall be effective when actually delivered, when actually received by telefacsimile or electronic mail (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Guaranty. All revocation notices by Guarantor shall be in writing and shall be effective upon delivery to Lender as provided in the section of this Guaranty entitled "DURATION OF GUARANTY." Any party may change its address for notices under this Guaranty by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Guarantor agrees to keep Lender informed at all times of Guarantor's current address. Unless otherwise provided or required by law, if there is more than one Guarantor, any notice given by Lender to any Guarantor is deemed to be notice given to all Guarantors.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Guaranty unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Guaranty shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Guaranty. No prior waiver by Lender, nor any course of dealing between Lender and Guarantor, shall constitute a waiver of any of Lender's rights or of any of Guarantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Guaranty, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Successors and Assigns.** Subject to any limitations stated in this Guaranty on transfer of Guarantor's interest, this Guaranty shall be binding upon and inure to the benefit of the parties, their successors and assigns.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Guaranty. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Guaranty that are defined in the Uniform Commercial Code shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Borrower.** The word "Borrower" means OMNI FUNDING CORP. and its successors and assigns.

**Company.** The word "Company" means ORTHOPAEDIC NEURO INSTITUTE SURGICAL CENTER, LLC and its successors and assigns.

**Debt Service Coverage Ratio.** The term "Debt Service Coverage Ratio" means the ratio, determined as of the end of each fiscal year of Company, beginning with the fiscal year ending December 31, 2013, of (i) the sum of net income, plus depreciation, interest, amortization and income taxes minus distributions by Company to its members to (ii) required principal and interest payments on the Indebtedness for such period.

**Guarantor.** The word "Guarantor" means JAY WINZENREID, M.D. and his successors and assigns.

A42

**Guarantor's Share of the Indebtedness.** The words "Guarantor's Share of the Indebtedness" mean Guarantor's indebtedness to Lender as more particularly described in this Guaranty.

**Guaranty.** The word "Guaranty" means this guaranty from Guarantor to Lender.

**Indebtedness.** The word "Indebtedness" means Borrower's indebtedness to Lender under the Loan Agreement as more particularly described in this Guaranty.

**Lender.** The word "Lender" means WESTERN SECURITY BANK, its successors and assigns.

**Loan Agreement.** The term "Loan Agreement" means that certain Business Loan Agreement entered into by and between Borrower and Lender for a loan in the amount of up to $3,020,653.00 and dated December 12, 2011.

**Note.** The word "Note" means the promissory note executed by Borrower **in the original principal amount of $3,020,658.00** dated December 12, 2011, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement.

**Related Documents.** The words "Related Documents" shall have the meaning ascribed to such term in the Loan Agreement.

**Uniform Commercial Code.** The words "Uniform Commercial Code" mean the Uniform Commercial Code as now or hereafter adopted in the State of Montana; provided that if, by reason of mandatory provisions of law, the perfection or the effect of perfection or non-perfection of any security interest in any Collateral is governed by the Uniform Commercial Code as in effect in a jurisdiction other than Montana, the words "Uniform Commercial Code" mean the Uniform Commercial Code as in effect in such other jurisdiction for purposes of the provisions hereof relating to such perfection or the effect of perfection or non-perfection.

EACH UNDERSIGNED GUARANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS GUARANTY AND AGREES TO ITS TERMS. IN ADDITION, EACH GUARANTOR UNDERSTANDS THAT THIS GUARANTY IS EFFECTIVE UPON GUARANTOR'S EXECUTION AND DELIVERY OF THIS GUARANTY TO LENDER AND THAT THE GUARANTY WILL CONTINUE UNTIL TERMINATED IN THE MANNER SET FORTH IN THE SECTION TITLED "DURATION OF GUARANTY". NO FORMAL ACCEPTANCE BY LENDER IS NECESSARY TO MAKE THIS GUARANTY EFFECTIVE. THIS GUARANTY IS DATED DECEMBER 12, 2011.

[THE BALANCE OF THIS PAGE IS LEFT BLANK INTENTIONALLY.

THE SIGNATURE OF THE GUARANTOR IS FOUND ON THE NEXT PAGE]

**A43**

SIGNATURE PAGE TO COMMERCIAL GUARANTY OF ~~STEPHEN EMERY~~

JAY A. WINZENREID

GUARANTOR:
X _____
JAY WINZENREID, M.D.

LASER PRO Lending, Ver. 5.68.00.003  Copr. Harland Financial Solutions, Inc. 1997, 2011.  All Rights Reserved.  - MT  L:\CFI\LPL\E35\FC.TR 15686 PR-30 (M)

# COMMERCIAL GUARANTY

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|-----------|-----------|----------|---------|-------------|---------|---------|----------|
|           |           |          |         | 4A / 200    |         | 059     |          |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.

Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** OMNI FUNDING CORP.
c/o GLOBAL SECURITIZATION SERVICES, LLC
68 SOUTH SERVICE ROAD, STE 120
MELVILLE, NY 11747

**Lender:** WESTERN SECURITY BANK
DOWNTOWN BROADWAY BRANCH
2812 FIRST AVENUE NORTH
PO BOX 2508
BILLINGS, MT 59103
(406) 371-8200

**Guarantor:** STEPHEN EMERY
122 COYOTE TRL
CODY, WY 82414-7917

**CONTINUING GUARANTEE OF PAYMENT AND PERFORMANCE.** For good and valuable consideration, Guarantor absolutely and unconditionally guarantees full and punctual payment and satisfaction of Guarantor's Share of the Indebtedness of Borrower to Lender, and the performance and discharge of all Borrower's obligations under the Note and the Related Documents. This is a guaranty of payment and performance and not of collection, so Lender can enforce this Guaranty against Guarantor even when Lender has not exhausted Lender's remedies against anyone else obligated to pay the Indebtedness or against any collateral securing the Indebtedness, this Guaranty or any other guaranty of the Indebtedness. Guarantor will make any payments to Lender or its order, on demand, in legal tender of the United States of America, in same-day funds, without set-off or deduction or counterclaim, and will otherwise perform Borrower's obligations under the Note and Related Documents. Under this Guaranty, Guarantor's obligations are continuing.

**INDEBTEDNESS.** The word "Indebtedness" means "Indebtedness" as defined in the Loan Agreement.

If Lender presently holds one or more guaranties, or hereafter receives additional guaranties from Guarantor, Lender's rights under all guaranties shall be cumulative. This Guaranty shall not (unless specifically provided below to the contrary) affect or invalidate any such other guaranties. Guarantor's liability will be Guarantor's aggregate liability under the terms of this Guaranty and any such other unterminated guaranties.

**GUARANTOR'S SHARE OF THE INDEBTEDNESS.** The words "Guarantor's Share of the Indebtedness" as used in this Guaranty mean 12.500% of all unpaid indebtedness outstanding from time to time not to exceed Three Hundred Seventy Seven Thousand Five Hundred Eight Two & 25/100 Dollars ($377,582.25); provided, Guarantor's Share of the Indebtedness shall be reduced to 10.000% of all unpaid indebtedness outstanding from time to time not to exceed Three Hundred Two Thousand Sixty Five and 80/100 Dollars ($302,065.80) as of December 31, 2014 if on such date Company has achieved a Debt Service Coverage Ratio of not less than 1.0 to 1.0 as determined from Company's 2014 tax return provided as required under the terms of the Loan Agreement.

Lender shall determine Guarantor's Share of the Indebtedness when Lender makes demand on Guarantor. After a determination, Guarantor's Share of the Indebtedness will only be reduced by sums actually paid by Guarantor under this Guaranty, but will not be reduced by sums from any other source including, but not limited to, sums realized from any collateral securing the Indebtedness or this Guaranty, or payments by anyone other than Guarantor, or reductions by operation of law, judicial order or equitable principles. Lender has the sole and absolute discretion to determine how sums shall be applied among guaranties of the Indebtedness.

The above limitation on liability is not a restriction on the amount of the Note of Borrower to Lender either in the aggregate or at any one time.

**CONTINUING GUARANTY.** THIS IS A "CONTINUING GUARANTY" UNDER WHICH GUARANTOR AGREES TO GUARANTEE THE FULL AND PUNCTUAL PAYMENT, PERFORMANCE AND SATISFACTION OF GUARANTOR'S SHARE OF THE INDEBTEDNESS OF BORROWER TO LENDER, NOW EXISTING OR HEREAFTER ARISING OR ACQUIRED, ON A CONTINUING BASIS. ACCORDINGLY, ANY PAYMENTS MADE ON THE INDEBTEDNESS WILL NOT DISCHARGE OR DIMINISH GUARANTOR'S OBLIGATIONS AND LIABILITY UNDER THIS GUARANTY FOR ANY REMAINING AND SUCCEEDING INDEBTEDNESS EVEN WHEN ALL OR PART OF THE OUTSTANDING INDEBTEDNESS MAY BE A ZERO BALANCE FROM TIME TO TIME.

**DURATION OF GUARANTY.** This Guaranty and Guarantor's obligations and liability hereunder shall remain in full force and effect until such time as the Indebtedness is fully paid and satisfied, at which time Lender shall provide Guarantor a written cancellation instrument in favor of Guarantor. It is anticipated that fluctuations may occur in the aggregate amount of the Indebtedness guaranteed under this Guaranty and it is specifically acknowledged and agreed to by Guarantor that reductions in the amount of the Indebtedness, even to zero ($0.00) dollars, unless the Indebtedness is fully paid and satisfied.

**GUARANTOR'S AUTHORIZATION TO LENDER.** Guarantor authorizes Lender, either before or after any revocation hereof, **without notice or demand and without lessening Guarantor's liability under this Guaranty, from time to time:** (A) prior to revocation as set forth above, to make one or more additional secured or unsecured loans to Borrower, to lease equipment or other goods to Borrower, or otherwise to extend additional credit to Borrower; (B) to alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of the Indebtedness or any part of the Indebtedness, including increases and decreases of the rate of interest on the Indebtedness; extensions may be repeated and may be for longer than the original loan term; (C) to take and hold security for the payment of this Guaranty or the Indebtedness, and exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any such security, with or without the substitution of new collateral; (D) to release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; (E) to determine how, when and what application of payments and credits shall be made on the Indebtedness and; (F) to apply such security and direct the order or manner of sale thereof, including without limitation, any nonjudicial sale permitted by the terms of the controlling security agreement or deed of trust, as Lender in its discretion may determine.

**GUARANTOR'S REPRESENTATIONS AND WARRANTIES.** Guarantor represents and warrants to Lender that (A) no representations or agreements of any kind have been made to Guarantor which would limit or qualify in any way the terms of this Guaranty; (B) this Guaranty is executed at Borrower's request and not at the request of Lender; (C) Guarantor has full power, right and authority to enter into this Guaranty; (D) the provisions of this Guaranty do not conflict with or result in a default under any written agreement or other instrument binding upon Guarantor and do not result in a violation of any law, regulation, court decree or order applicable to Guarantor; (E) Guarantor has not and will not, without the prior written consent of Lender, sell, lease, assign, encumber, hypothecate, transfer, or otherwise dispose of all or substantially all of Guarantor's assets; (F) upon Lender's request, Guarantor will provide to Lender financial and credit information in form acceptable to Lender, and all such financial information which currently has been, and all future financial information which will be provided to Lender is and will be true and correct in all material respects and fairly present Guarantor's financial condition as of the dates the financial information is provided; (G) no litigation, claim, investigation, administrative proceeding or similar action (including those for unpaid taxes) against Guarantor is pending or to the knowledge of the Guarantor threatened which if adversely determined would have material adverse effect; (H) Lender has made no representation to Guarantor as to the creditworthiness of Borrower; and (I) Guarantor has established adequate means of obtaining from Borrower on a continuing basis information regarding Borrower's financial condition. Guarantor agrees to keep adequately informed from such means of any facts, events, or circumstances which might in any way affect Guarantor's risks under this Guaranty, and Guarantor further agrees that, absent a request for information, Lender shall have no obligation to disclose to Guarantor any information or documents acquired by Lender in the course of its relationship with Borrower.

**GUARANTOR'S WAIVERS.** Except as prohibited by applicable law, Guarantor waives any right to require Lender (A) to continue lending money or to extend other credit to Borrower; (B) to make any presentment, protest, demand, or notice of any kind, including notice of any nonpayment of the Indebtedness or of any nonpayment related to any collateral, or notice of any action or nonaction on the part of Borrower, Lender, any surety, endorser, or other guarantor in connection with the Indebtedness or in connection with the creation of new or additional loans or obligations; (C) to resort for payment or to proceed directly or at once against any person, including Borrower or any other guarantor; (D) to proceed directly against or exhaust any collateral held by Lender from Borrower, any other guarantor, or any other person; (E) to give notice of the terms, time, and place of any public or private sale of personal property security held by Lender from Borrower or to comply with any other applicable provisions of the Uniform Commercial Code; (F) to pursue any other remedy within Lender's power; or (G) to commit any act or omission of any kind, or at any time, with respect to any matter whatsoever.

**A45**

Guarantor also waives any and all rights or defenses based on suretyship or impairment of collateral including, but not limited to, any rights or defenses arising by reason of (A) any "one action" or "anti-deficiency" law or any other law which may prevent Lender from bringing any action, including a claim for deficiency, against Guarantor, before or after Lender's commencement or completion of any foreclosure action, either judicially or by exercise of a power of sale; (B) any election of remedies by Lender which destroys or otherwise adversely affects Guarantor's subrogation rights or Guarantor's rights to proceed against Borrower for reimbursement, including without limitation, any loss of rights Guarantor may suffer by reason of any law limiting, qualifying, or discharging the Indebtedness; (C) any disability or other defense of Borrower, of any other guarantor, or of any other person, or by reason of the cessation of Borrower's liability from any cause whatsoever, other than payment in full in legal tender, of the Indebtedness; (D) any right to claim discharge of the Indebtedness on the basis of unjustified impairment of any collateral for the Indebtedness; (E) any statute of limitations, if at any time any action or suit brought by Lender against Guarantor is commenced, there is outstanding Indebtedness which is not barred by any applicable statute of limitations; or (F) any defenses given to guarantors at law or in equity other than actual payment and performance of the Indebtedness. If payment is made by Borrower, whether voluntarily or otherwise, or by any third party, on the Indebtedness and thereafter Lender is forced to remit the amount of that payment to Borrower's trustee in bankruptcy or to any similar person under any federal or state bankruptcy law or law for the relief of debtors, the Indebtedness shall be considered unpaid for the purpose of the enforcement of this Guaranty.

Guarantor further waives and agrees not to assert or claim at any time any deductions to the amount guaranteed under this Guaranty for any claim of setoff, counterclaim, counter demand, recoupment or similar right, whether such claim, demand or right may be asserted by the Borrower, the Guarantor, or both.

**GUARANTOR'S UNDERSTANDING WITH RESPECT TO WAIVERS.** Guarantor warrants and agrees that each of the waivers set forth above is made with Guarantor's full knowledge of its significance and consequences and that, under the circumstances, the waivers are reasonable and not contrary to public policy or law. If any such waiver is determined to be contrary to any applicable law or public policy, such waiver shall be effective only to the extent permitted by law or public policy.

**SUBORDINATION OF BORROWER'S DEBTS TO GUARANTOR.** Guarantor agrees that the Indebtedness, whether now existing or hereafter created, shall be superior to any claim that Guarantor may now have or hereafter acquire against Borrower, whether or not Borrower becomes insolvent. Guarantor hereby expressly subordinates any claim Guarantor may have against Borrower, upon any account whatsoever, to any claim that Lender may now or hereafter have against Borrower. In the event of insolvency and consequent liquidation of the assets of Borrower, through bankruptcy, by an assignment for the benefit of creditors, by voluntary liquidation, or otherwise, the assets of Borrower applicable to the payment of the claims of both Lender and Guarantor shall be paid to Lender and shall be first applied by Lender to the Indebtedness. Guarantor does hereby assign to Lender all claims which it may have or acquire against Borrower or against any assignee or trustee in bankruptcy of Borrower; provided however, that such assignment shall be effective only for the purpose of assuring to Lender full payment in legal tender of the Indebtedness guaranteed under this Guaranty. If Lender so requests, any notes or credit agreements now or hereafter evidencing any debts or obligations of Borrower to Guarantor shall be marked with a legend that the same are subject to this Guaranty and shall be delivered to Lender. Guarantor agrees, and Lender is hereby authorized, in the name of Guarantor, from time to time to file financing statements and continuation statements and to execute documents and to take such other actions as Lender deems necessary or appropriate to perfect, preserve and enforce its rights under this Guaranty.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Guaranty:

**Amendments.** This Guaranty, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Guaranty. No alteration of or amendment to this Guaranty shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Attorneys' Fees; Expenses.** Guarantor agrees to pay upon demand all of Lender's reasonable external costs and expenses, including Lender's reasonable external attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Agreement. Lender may hire or pay someone else to help enforce this Agreement, and Guarantor shall pay the reasonable external costs and expenses of such enforcement. Costs and expenses include Lender's reasonable external attorneys' fees and legal expenses whether or not there is a lawsuit, including reasonable external attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Guarantor also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.** Caption headings in this Guaranty are for convenience purposes only and are not to be used to interpret or define the provisions of this Guaranty.

**Governing Law.** This Guaranty will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Montana without regard to its conflicts of law provisions.

**Choice of Venue.** If there is a lawsuit, Guarantor agrees upon Lender's request to submit to the jurisdiction of the State and U.S. District courts of YELLOWSTONE County, State of Montana, and any appellate courts thereof.

**Interpretation.** In all cases where there is more than one Borrower or Guarantor, then all words used in this Guaranty in the singular shall be deemed to have been used in the plural where the context and construction so require; and where there is more than one Borrower named in this Guaranty or when this Guaranty is executed by more than one Guarantor, the words "Borrower" and "Guarantor" respectively shall mean all and any one or more of them. The words "Guarantor," "Borrower," and "Lender" include the heirs, successors, assigns, and transferees of each of them. If a court finds that any provision of this Guaranty is not valid or should not be enforced, that fact by itself will not mean that the rest of this Guaranty will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Guaranty even if a provision of this Guaranty may be found to be invalid or unenforceable. If any one or more of Borrower or Guarantor are corporations, partnerships, limited liability companies, or similar entities, it is not necessary for Lender to inquire into the powers of Borrower or Guarantor or of the officers, directors, partners, managers, or other agents acting or purporting to act on their behalf, and any Indebtedness made or created in reliance upon the professed exercise of such powers shall be guaranteed under this Guaranty.

**Notices.** Any notice required to be given under this Guaranty shall be given in writing, and, except for revocation notices by Guarantor, shall be effective when actually delivered, when actually received by telefacsimile or electronic mail (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Guaranty. All revocation notices by Guarantor shall be in writing and shall be effective upon delivery to Lender as provided in the section of this Guaranty entitled "DURATION OF GUARANTY." Any party may change its address for notices under this Guaranty by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Guarantor agrees to keep Lender informed at all times of Guarantor's current address. Unless otherwise provided or required by law, if there is more than one Guarantor, any notice given by Lender to any Guarantor is deemed to be notice given to all Guarantors.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Guaranty unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Guaranty shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Guaranty. No prior waiver by Lender, nor any course of dealing between Lender and Guarantor, shall constitute a waiver of any of Lender's rights or of any of Guarantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Guaranty, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Successors and Assigns.** Subject to any limitations stated in this Guaranty on transfer of Guarantor's interest, this Guaranty shall be binding upon and inure to the benefit of the parties, their successors and assigns.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Guaranty. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Guaranty shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Borrower.** The word "Borrower" means OMNI FUNDING CORP. and its successors and assigns.

**Company.** The word "Company" means ORTHOPAEDIC NEURO INSTITUTE SURGICAL CENTER, LLC and its successors and assigns.

**Debt Service Coverage Ratio.** The term "Debt Service Coverage Ratio" means the ratio, determined as of the end of each fiscal year of Company, beginning with the fiscal year ending December 31, 2013, of (i) the sum of net income, plus depreciation, interest, amortization and income taxes minus distributions by Company to its members to (ii) required principal and interest payments on the Indebtedness for such period.

**Guarantor.** The word "Guarantor" means STEPHEN EMERY and his successors and assigns.

**A46**

**Guarantor's Share of the Indebtedness.** The words "Guarantor's Share of the Indebtedness" mean Guarantor's indebtedness to Lender as more particularly described in this Guaranty.

**Guaranty.** The word "Guaranty" means this guaranty from Guarantor to Lender.

**Indebtedness.** The word "Indebtedness" means Borrower's indebtedness to Lender under the Loan Agreement as more particularly described in this Guaranty.

**Lender.** The word "Lender" means WESTERN SECURITY BANK, its successors and assigns.

**Loan Agreement.** The term "Loan Agreement" means that certain Business Loan Agreement entered into by and between Borrower and Lender for a loan in the amount of up to $3,020,653.00 and dated December 12, 2011.

**Note.** The word "Note" means the promissory note executed by Borrower **in the original principal amount of $3,020,658.00** dated December 12, 2011, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement.

**Related Documents.** The words "Related Documents" shall have the meaning ascribed to such term in the Loan Agreement.

**Uniform Commercial Code.** The words "Uniform Commercial Code" mean the Uniform Commercial Code as now or hereafter adopted in the State of Montana; provided that if, by reason of mandatory provisions of law, the perfection or the effect of perfection or non-perfection of any security interest in any Collateral is governed by the Uniform Commercial Code as in effect in a jurisdiction other than Montana, the words "Uniform Commercial Code" mean the Uniform Commercial Code as in effect in such other jurisdiction for purposes of the provisions hereof relating to such perfection or the effect of perfection or non-perfection.

EACH UNDERSIGNED **GUARANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS GUARANTY AND AGREES TO ITS TERMS.  IN ADDITION, EACH GUARANTOR UNDERSTANDS THAT THIS GUARANTY IS EFFECTIVE UPON GUARANTOR'S EXECUTION AND DELIVERY OF THIS GUARANTY TO LENDER AND THAT THE GUARANTY WILL CONTINUE UNTIL TERMINATED IN THE MANNER SET FORTH IN THE SECTION TITLED "DURATION OF GUARANTY".  NO FORMAL ACCEPTANCE BY LENDER IS NECESSARY TO MAKE THIS GUARANTY EFFECTIVE. THIS GUARANTY IS DATED DECEMBER 12, 2011.**

[THE BALANCE OF THIS PAGE IS LEFT BLANK INTENTIONALLY.

THE SIGNATURE OF THE GUARANTOR IS FOUND ON THE NEXT PAGE]

**A47**

SIGNATURE PAGE TO COMMERCIAL GUARANTY OF STEPHEN EMERY

**GUARANTOR:**
X
**STEPHEN EMERY**

LASER PRO Lending, Ver. 5.66.00.002  Copr. Harland Financial Solutions, Inc. 1997, 2011.  All Rights Reserved.  - MT  L:\CFALPUE39.FC  TR-58895 PR-20 (M)

**A48**